**Rowland W. DORY, Plaintiff–Appellant,**

**v.**

**Burton T. RYAN, Jr., Assistant District Attorney, Nassau County; Robert Anderson, Defendants–Appellees.**

No. 1503, Docket 92–2790.

United States Court of Appeals, Second Circuit.

Submitted May 18, 1993.

Decided July 28, 1993.

Rowland W. Dory, pro se.

Robert W. Schmidt, County Atty., Nassau County, NY (Ernest G. D'Angelo, Deputy County Atty., of counsel), for defendant-appellee.

Before: LUMBARD, CARDAMONE, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Rowland W. Dory, proceeding *pro se,* appeals from a judgment of the United States District Court for the Eastern District of New York (Platt, *C.J.* ) dismissing *sua sponte* his complaint pursuant to 42 U.S.C. § 1983 (1988). Dory's complaint alleged that he was convicted in 1981 for narcotics offenses because of a conspiracy between the prosecuting attorney and a police officer witness to facilitate the admission of perjurious testimony against him. The complaint was dismissed on two bases: first, that it was untimely; and second, that the defendant-appellees enjoyed absolute immunity for their roles in Dory's trial. On appeal, Dory argues that his complaint was timely because he could not have known about the conspiracy until informed by a government witness. He also contends that the defendant-appellees do not enjoy absolute immunity for their roles in the conspiracy.

For the reasons set forth below, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiff-appellant Rowland W. Dory was convicted in 1981 of aiding and abetting in the offer to sell three ounces of cocaine. He is currently incarcerated at the Auburn Correctional Facility in Auburn, New York.

In 1989, Dory received a notarized affidavit from Edward Strahm, who had been a witness against Dory in Dory's 1981 trial. The affidavit was dated August 29, 1989, and Dory received it three days later. Strahm averred in the affidavit that he had been coerced by the prosecution to commit perjury at Dory's trial. Specifically, Strahm stated that he had been told to testify that Dory had provided him with cocaine, when in fact Dory had only introduced Strahm to other dealers. Strahm also recounted that he was told to testify that there were people in danger inside the house police entered to arrest Dory, even though there "was no threat of danger in the house."

Subsequently, Dory commenced an action under 42 U.S.C. § 1983 (1988) against defendant-appellees Burton Ryan, the assistant district attorney who prosecuted him, and police officer Robert Anderson, who testified at his trial. Dory alleged that Ryan and Anderson had entered into an extra-judicial conspiracy to convict Dory based on perjured testimony. Dory also claimed that Ryan had withheld exculpatory material from the defense, material that would have undermined the perjured testimony, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The complaint was filed on September 11, 1992, but a copy of a "Department of Correctional Services Disbursement or Refund Request" form indicates that on either August 31, 1992 or September 1, 1992 Dory submitted correspondence related to his complaint to prison officials.

Dory's complaint was brought *pro se* before the United States District Court for the Eastern District of New York (Platt, *J.* ).

By an order filed November 30, 1992, the district court *sua sponte* dismissed the complaint without prejudice on two grounds. First, the court determined that Dory's action was untimely under the three-year statute of limitations. Dory had not brought his complaint until 11 years after the original actions by the state officials that prompted the suit.

The second basis for dismissing Dory's complaint was the district court's determination that Dory had no chance of success on the merits because both Ryan and Anderson enjoyed absolute immunity for their roles in Dory's trial. The court noted that Ryan was entitled to prosecutorial immunity, while Anderson was entitled to witness immunity.

Dory now appeals, arguing that the district court erred in dismissing his complaint. For the reasons set forth below, we reverse.

## DISCUSSION

■ Because the district court dismissed Dory's claim *sua sponte*, we must review the court's determination *de novo*, viewing the evidence in the light most favorable to Dory and giving him the benefit of all reasonable inferences. *See Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir.1993); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991).

### I. *The Statute of Limitations*

Dory argues that his complaint was not time-barred, contending that the statute of limitations did not begin to run until he was made aware of or discovered the alleged extra-judicial conspiracy on September 1, 1989. Furthermore, he argues that he instituted the action within three years of that date, because he gave his legal papers to prison officials on or before September 1, 1992.

■ Dory brought his action under 42 U.S.C. § 1983, which provides individuals with a private cause of action for deprivation of constitutional rights by public officials acting under color of law. The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injuries occurring in the state in which the appropri-

ate federal court sits. *Id.* § 1988; *see Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In New York State, the applicable statute of limitations for personal injuries is three years. N.Y.Civ. Prac.L. § 214(5) (McKinney 1990); *see Owens v. Okure*, 488 U.S. 235, 249–51, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989); *Gleason v. McBride*, 869 F.2d 688, 691 (2d Cir.1989).

■ Dory's complaint alleges that there was an extra-judicial conspiracy to deny him a fair trial in 1981, 11 years before he filed his claim. However, he argues that the equitable estoppel doctrine applies, extending the statute of limitations until he could have reasonably found out about the conspiracy. *See Keating v. Carey*, 706 F.2d 377, 381 (2d Cir.1983). Under the doctrine, "when the defendant fraudulently conceals the wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Id.* at 382. We have previously extended this doctrine to § 1983 claims arising under New York State statutes of limitations. *See id.*

Dory argues that he could not have discovered the conspiracy until he received Strahm's affidavit in 1989. Plainly, as a prisoner, he could not possibly have known about the alleged conspiracy until it was revealed to him. The equitable estoppel doctrine therefore applies here, extending the statute of limitations to September 1, 1992, three years after Dory received the Strahm affidavit.

■ Dory's claim, however, was not filed until September 11, 1992, ten days after the expiration of the extended statute of limitations. Although this would normally resolve the issue, Dory argues that he effectively filed the complaint when he delivered correspondence directed to the district court to prison officials on either August 31, 1992 or September 1, 1992. His argument is substantiated by a copy of the Department of Correctional Services form demonstrating that he had submitted his legal papers to prison officials prior to the official filing of the complaint.

The Supreme Court in *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988), held that a *pro se* prisoner's notice of appeal was filed when delivered to prison officials for transmittal to the court. The Court noted the "unique" difficulties faced by *pro se* prisoner litigants, who "cannot take the steps other litigants can take to monitor the processing of their notices of appeal." *Id.* The Court reasoned that courts generally require actual receipt by the court clerk of filing papers on the due date, rather than the mailing of those papers, but concluded that an exception should be made for prisoners who have no choice other than to give their legal documents to prison officials. *Id.* at 275, 108 S.Ct. at 2384. Therefore, the Court construed Fed.R.App.P. 4(a)(1) and 3(a), which provide that an appeal is commenced by the filing of the notice of appeal with the clerk of the appropriate court, to allow the filing of notices of appeal by *pro se* prisoner litigants at the time the notices are turned over to prison officials. This reasoning has been extended by at least one Court of Appeals to the filing of complaints. *See Lewis v. Richmond City Police Dep't,* 947 F.2d 733 (4th Cir.1991) (per curiam).

Although *Houston* was a *habeas* case that was based on an interpretation of Fed. R.App.P. 4(a)(1), we see no reason why the same rationale should not apply here. As the Fourth Circuit in *Lewis* noted, the language of Fed.R.Civ.P. 5(e), governing the filing of complaints, is substantially similar to the language of Fed.R.App.P. 4(a)(1). *See Lewis,* 947 F.2d at 736. Both predicate the initiation of the pertinent action on the "filing" of the appropriate legal documents with the clerk of the court. *Compare* Fed. R.Civ.P. 5(e) ("The filing of papers with the court as required by these rules shall be made by filing them with the clerk of the court....") *with* Fed.R.App.P. 4(a)(1) (notices of appeal "shall be filed with the clerk of the district court").

Moreover, *Houston* gives no indication that it should be limited to *habeas* appeals. The foundation of *Houston* is the inherent disadvantage suffered by the *pro se* litigant in his inability to monitor the course of his litigation. That disadvantage is no different in the civil context. The concerns illustrated by the Court in *Houston* apply equally here. *See Houston,* 487 U.S. at 271, 108 S.Ct. at 2382. Unlike other litigants, the *pro se* prisoner litigant cannot personally ensure receipt of his legal documents by the court clerk. He cannot even place his complaint directly into the hands of the United States Postal Service or other private carriers, or call the court to determine whether the complaint has been received and stamped "filed." The prisoner simply has no control over the processing of his complaint, and he should not be required to do more under Fed.R.Civ.P. 5(e) than turn his complaint over to prison officials within the statute of limitations period.

The concerns prompting the Supreme Court's decision in *Houston* are equally applicable to the filing of civil complaints *pro se* by prisoners. The district court, unaware that Dory delivered his documentation to prison officials within the three-year statute of limitations, dismissed his claim. The additional evidence of the delivery to the officials, however, indicates that the claim was timely. The remaining question, then, is whether the claim was properly dismissed on the bases of prosecutorial and witness immunity.

## II. *Judicial Immunity*

The district court found that Ryan and Anderson could not be sued under § 1983 for their judicial actions. Ryan was deemed entitled to prosecutorial immunity, and Johnson was found entitled to witness immunity. Dory argues, however, that no immunity should apply where the defendants-appellees entered into an extra-judicial conspiracy to deny him a fair trial.

The law is clear that a prosecutor acting within the scope of his duties in pursuing a criminal prosecution is absolutely immune from civil suit under § 1983. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). This immunity is applicable even where the prosecutor knowingly used perjured testimony and deliberately withheld exculpatory information. *Id.* Similarly, the Supreme Court has held that § 1983 does not authorize a convicted defen-

dant to assert a claim for damages against a police officer for giving perjured testimony at the defendant's trial. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■ However, Dory is not basing his § 1983 claim on the substance of Anderson's testimony or Ryan's performance as assistant district attorney. Rather, he has based his claim "on their alleged *conspiracy* ... to present false testimony and to withhold exculpatory evidence in the course of criminal proceedings." *San Filippo v. United States Trust Co.,* 737 F.2d 246, 254 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). In *San Filippo,* we confronted a similar claim raised by a convicted defendant against witnesses who had testified in his trial and the prosecutor who had presented them. In that case, we stated:

> *Briscoe v. LaHue, supra,* was expressly limited to immunity for testimony given in judicial proceedings, and its rationale—to encourage witnesses to come forward with all they know—does not justify extending that immunity to cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony.

*Id.* at 255. We went on to point out, however, that this holding did not open the floodgates to § 1983 litigation by plaintiffs now charging conspiracies rather than mere perjury: "[i]nsofar as witnesses may face groundless 'conspiracy' suits, ample protection against costly defense should ordinarily be provided by the possibility of [Fed. R.Civ.P.] 12(b)(6) dismissal or summary judgment." *Id.*

Prosecutors are not entitled by reason of their offices to engage in conspiracies with witnesses against defendants. Neither they nor witnesses they involve in such conspiracies enjoy immunity for such actions. We note that Dory has done more than simply make a conclusory allegation of an extra-judicial conspiracy. In *San Filippo,* we held that the plaintiff had not presented "one shred of evidence in support of his conclusory assertion of conspiracy." *Id.* at 256. In this case, however, Dory has presented the sworn affidavit of a government witness declaring that the assistant district attorney conspired to present false testimony at Dory's trial. The Strahm affidavit contains serious sworn allegations that present at least a viable claim under § 1983:

> The A.D.A. who was prosecuting the case, Mr. [Burton] Ryan, prepared me to testify as his witness by going over what had happened on the night of the arrest and the days before it. Whenever I would tell him something he did not like, he would tell me that I shouldn't say that and then tell me what to say instead. Sometimes, the things he told me to say were outright lies and I would tell him that it did not happen that way. He would remind me that he wanted the conviction and that if I was to get a reduced sentence, he had to win this case so I better think again about how it happened.

We have no way of knowing whether Strahm's allegations have any basis in fact. We assume that Strahm would be available as a witness, and the credibility of his testimony could then be evaluated. Should his testimony be credited and corroborated, Dory might make out a valid claim under § 1983. It might also be that the Strahm affidavit is pure fabrication, at which point the district court would properly dismiss it.

The district court, however, dismissed Dory's claim *sua sponte* without any hearing on the merits. In *San Filippo,* we warned that § 1983 suits against prosecutors and witnesses alleging conspiracies to commit perjury must be carefully scrutinized to weed out meritless claims. While many such claims will easily be dismissed, since it is difficult to gather proof of a *San Filippo* prosecutorial conspiracy, an apparently unsolicited sworn affidavit from a witness is enough to at least withstand a *sua sponte* dismissal. Therefore, we conclude that Dory's claim should be remanded to the district court.

### CONCLUSION

For these reasons, we reverse and remand to the district court for proceedings consistent with this opinion.