**Stephen SMITH**

v.

**Captain MUCCINO et al.**

**No. 3:98CV324(JBA).**

United States District Court, D. Connecticut.

Sept. 25, 2002.

Steven L. Smith, Suffield, CT, pro se.

Madeline Ann Melchionne, Atty. General's Office, Hartford, CT, Antoria D. Howard, Atty. General's Office, Hartford, CT, for defendants.

### *Ruling on Motion to Reopen [Doc. # 35]*

ARTERTON, District Judge.

This case was closed when the plaintiff failed to respond to a motion for judgment on the pleadings. For the reasons set out below, the motion to reopen this case is granted.

### I. Background

Steven Smith, an inmate in the Connecticut correctional system, filed this lawsuit in February 1998, asserting several claims against correctional officers and officials of the Department of Corrections. While Smith makes numerous assertions regarding the disciplinary process in the Department of Corrections, the gist of his complaints appears to relate to defendants' alleged practice of housing him with violent inmates, sometimes in retaliation for his complaints and other times out of convenience to the DOC. Specifically, Smith, who is Caucasian and who believes he is perceived to be gay, alleges that he is repeatedly housed with racist and homophobic inmates, and that defendants consistently refuse his requests for a cell change. *E.g.*, Compl. Page 2, ¶ 7[1]; Compl. Page 3.

Defendants filed a motion for judgment on the pleadings [Doc. # 13] on May 18, 1999, asserting that: (1) claims for money damages against defendants in their official capacities are barred by sovereign immunity; (2) defendants are protected by the doctrine of qualified immunity; (3) the allegations in the complaint fail to state a cause of action; (4) certain of plaintiff's claims relief are precluded by *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), collateral estoppel and res judicata; and (5) plaintiff's claims against certain supervisory DOC officials, such as Commissioner Armstrong, failed to allege the requisite personal involvement in the alleged deprivations at issue.

In response to defendants' motion, Smith filed a "Memorandum in Support of Plaintiff's Motion to Deny Summary Judgment / And Motion to Deny Summary Judgment" [Doc. # 19], in which he listed two cases, *U.S. v. Lara* and *Jensen v. Clarke* (no citations were provided),[2] and argued, *inter alia*, that "[a]lthough the plaintiff has no choice of cellmate, the state

---

**1.** Smith's complaint does not have numbered pages, and paragraph numbers are re-used in different sections.

**2.** Smith is apparently referring to *United States v. Lara*, 905 F.2d 599 (2d Cir.1990) (affirming district court's downward sentencing departure based on defendant's "particular vulnerability [to prison assaults] due to his immature appearance, sexual orientation and fragility.") and either *Jensen v. Clarke*, 73 F.3d 808 (8th Cir.1996) (remanding Eighth Amendment claim for district court to consider whether appellant prison officials were subjectively aware of the substantial risk of harm in the form of violence at the hands other inmates caused by prison officials' double celling policy) or *Jensen v. Clarke*, 94 F.3d 1191 (8th Cir.1996) (affirming, on return from remand, district court's determination that the manner in which prison officials'

does have an obligation to make cell assignments that *consider* an inmate['s] risk factors or is it o.k. to place a predatory inmate in with a vulnerable one to be repeatedly raped?" [Doc. # 19] at 2 (emphasis in original). Plaintiff further argued:

> The plaintiff asserts that he made complaints at Osborn CI when he heard a white officer threaten a black inmate. In retaliation for those complaints I received several violent, racists blacks—all hateful towards gays. I made it known to prison officials but I was told "No moves of convenience." Apparently prison officials believe that gays need to be double celled with the most homophobic inmates available. I ask the Court to review [*Lara*]. My time is significantly harder because 90% of the inmates DO NOT WANT a homosexual that's *known* in their cell.
>
> \* \* \* \* \* \*
>
> If X says if you put a white guy in my cell—I will kill him—I would hope the Court agrees, that if officials still put X in with a white inmate—that constitutes deliberate indifference. I assert the inmates I was double celled with *all* had long histories of being violent racists. I assert I was double celled with them out of retaliation for the complaints.

*Id.* at 3–4 (emphasis in original).

Before a ruling was issued on defendants' motion, the case was reported settled, *see* Notice to Counsel [Doc. # 23], and the Court denied the pending motion

as moot. [Doc. # 25]. After judgment of dismissal entered [Doc. # 26], Smith moved to re-open [Doc. # 27], because the reported settlement was never consummated. The Court granted Smith's motion, *see* [Doc. # 28], but Smith apparently never received notice of this ruling or of any proceedings subsequent to that order, as a result of his transfer to an out-of-state prison. Smith states as much in his current motion to reopen, and the defendants' opposition to the motion to re-open shows that Smith was transferred out of Connecticut on March 30, 2000, returned briefly in late 2000, and was again transferred out of Connecticut until May 8, 2001.

After the case was re-opened, defendants again moved for judgment on the pleadings [Doc. # 30], advancing arguments identical to those raised in their previous motion. Defendants' second 12(c) motion was filed May 16, 2000, and on June 21, 2000, as a matter of routine, the Court issued an "Order of Notice to Pro Se Litigant" [Doc. # 32] advising Smith that if he failed to respond to the motion, it would be granted. *Id.* at 1 ("Accordingly, if Mr. Smith fails to file any opposition within twenty (20) days of the date of this notice, or by July 11, 2000, the defendants' motion shall be granted.") (emphasis deleted; citation omitted). No opposition was filed, and the Court granted the motion based solely on Smith's failure to respond. *See* Ruling on Motion to Dismiss [Doc. # 33]. Judgment entered on August 17, 2000. *See* Judgment [Doc. # 34].[3]

---

double celling practice was carried out violated the Eighth Amendment by exposing prisoners to a substantial risk of harm that was avoidable by considering whether incoming inmates would be compatible with their cellmates.).

**3.** The Judgment (signed by a Deputy Clerk) recites: "This cause came on for consideration of the defendants' motion for judgment on the pleadings ... [T]he Court considered

the motion and all of the related papers and by ruling, the Court granted the motion for judgment on the pleadings after notice to the plaintiff and absent objection ...." [Doc. # 34]. However, as clear from the text of the actual ruling [Doc. # 33], the Court failed to consider the substance of defendants' motion as required by *Maggette v. Dalsheim,* 709 F.2d 800, 802 (2d Cir.1983), and instead relied only on Smith's failure to respond, *see* [Doc. # 33] ("On May 16, 2000, the defendants filed

■ Approximately one year later, Smith filed a "Motion to Re–Open" [Doc. # 35].[4] In this motion, he refers to the unrealized October 1999 settlement and his subsequent motion to reopen, but to no proceedings after that point. Smith writes:

> On or about 10–21–99 a telephonic settlement was reached. In good faith plaintiff filed a motion to dismiss due to the settlement. Several months later Asst. Atty. Gen. Victoria Howard sent a letter reneging on the deal. Plaintiff filed to reopen on 5–3–00. However, plaintiff was transferred into federal custody and held 6 mos. at M.C.C. in Manhattan. Plaintiff received no mail for the court regarding this action. Upon return to CT DOC plaintiff was again transferred out of state to Mass. Again no mail was received. Plaintiff returned in May 2001 but has been in R.H.U. and Northern for several months.

> The plaintiff acted in good faith, accepting the settlement offer made. The defendants reneged. Such tactics should be penalized.

Therefore the plaintiff requests the Honorable Court to order this action be reopened.

[Doc. # 35].

## II. Analysis

Smith's motion to reopen was made after a final judgment was entered in the case, and is thus governed by Fed.R.Civ.P. 60(b), which provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud[,] misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

■ "A motion under Rule 60(b) . . . is addressed to the sound discretion of the court that entered the judgment, and a

---

a motion for judgment on the pleadings. On June 21, 2000, the court issued an order directing the plaintiff to respond to the motion within twenty days of the date of the order, and informing him that the motion would be granted if he did not so respond. To date, the plaintiff has not filed a response to the defendants' motion for judgment on the pleadings. *Accordingly*, the defendants' motion . . . is GRANTED after notice to the plaintiff and absent objection.") (emphasis added).

**4.** As Smith is in custody, any papers he submits are deemed filed as of the date he presents them to prison officials for mailing. *See Dory v. Ryan*, 999 F.2d 679, 681–682 (2d Cir.1993). Smith dated the motion August 27, 2001 and dated an accompanying "Settlement Proposal" August 28, 2001. The motion

is file-stamped as received in the Clerk's office on September 7, 2001. While the normal practice in this District is to retain the postmark-bearing envelope in which the motion arrived, no such envelope is attached to this pleading. Further compounding the ambiguity as to the *actual date* Smith "filed" the motion under *Dory* is the fact that on the "Certificate of Service" attached to the motion, Smith writes that the motion has been mailed to Assistant Attorney General Michael Lanoue and then notes: "However Court should note Asst. Atty. Gen. Victoria [sic: Antoria] Howard was handling all plaintiffs actions. This Court returned my certificate when I listed Howard instead of Lanone [sic: Lanoue]." Thus, Smith claims these papers were returned at least once before docketing.

determination of such a motion will not be disturbed upon appeal unless there has been a clear abuse of the judicial power." *Parker v. Broadcast Music, Inc.*, 289 F.2d 313 (2d Cir.1961); *accord Altman v. Connally*, 456 F.2d 1114, 1116 (2d Cir.1972). While "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," *Carcello v. TJX Cos., Inc.*, 192 F.R.D. 61 (D.Conn.2000) (internal quotations omitted), the discretion of the Court is not limitless. *See Canfield v. Van Atta Buick/GMC Truck*, 127 F.3d 248, 251 (2d Cir.1997) (a party claiming excusable neglect for failure to read and obey an unambiguous rule will ordinarily lose); *Greater Baton Rouge Golf Assoc. v. Recreation & Park Com.*, 507 F.2d 227, 229 (5th Cir.1975) (district court abused its discretion when it denied Rule 60(b) motion when case had been dismissed for counsel's 28 minute tardiness for start of hearing).

■ The Court concludes that while Smith is foreclosed from seeking relief on the grounds of mistake, inadvertence, surprise, excusable neglect, or any misconduct of the state in the settlement proceedings given that more than one year elapsed between the entry of judgment and Smith's motion to reopen,[5] the residual provision of Fed.R.Civ.P. 60(b)(6) ("any other reason justifying relief from the operation of the judgment") is appropriately invoked in this case. "This catch-all clause in Rule 60 gives the district court a 'grand reservoir [of] equitable power to do justice in a particular case.'" *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir.1963) (*quoting* 7 Moore, Federal Practice (1950 ed.) at 308 and *citing Pierre v. Bernuth, Lembcke Co.*, 20

F.R.D. 116, 117 (S.D.N.Y.1956)); *accord Klapprott v. United States*, 335 U.S. 601, 614–615, 69 S.Ct. 384, 93 L.Ed. 1099 (1949) (plurality opinion) ("In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."); *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 760 (2d Cir.1981) (court's discretion "is especially broad under subdivision (6), because relief under it is to be granted when appropriate to accomplish justice") (citations and quotations omitted).

The Court concludes that the circumstances of this case are such that an exercise of the Court's power under Rule 60(b)(6) is warranted, because the Court incorrectly granted the motion for judgment on the pleadings without assessing the sufficiency of defendants' motion; defendants' motion was largely without merit; and Smith, by virtue of his prison transfers, was never notified of any proceedings subsequent to the Court's dismissal of the case as settled and therefore had no opportunity to respond or take an appeal.

■ First, the Court granted defendants' motion for judgment on the pleadings without assessing the legal sufficiency of the complaint. "Where ... the pleadings are themselves sufficient to withstand dismissal, a failure to respond to a 12(c) motion cannot constitute a 'default' justifying dismissal of the complaint." *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983); *cf. McCall v. Pataki*, 232 F.3d 321, 322–323 (2d Cir.2000) (error to dismiss complaint solely for failure to file opposition to motion to dismiss under Fed.

---

5. *See* Fed.R.Civ.P. 60(b) ("[F]or reasons (1), (2), and (3), [the motion shall be made] not more than one year after the judgment, order, or proceeding was entered or taken."). While

the date of filing is unclear, *see supra* note 5, the fact that Smith dated his motion August 27, 2001 appears to indicate that it was not filed within one year of the date of judgment.

R.Civ.P. 12(b)(6) without assessing the legal sufficiency of the complaint); *Amaker v. Foley,* 274 F.3d 677 (2d Cir.2001) ("[E]ven when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

▇▇▇▇ Further, the majority of grounds for defendants' motion for judgment on the pleadings lack merit. Smith's primary challenge is to the alleged negligent or retaliatory double celling with aggressive inmates, which is not a claim that double celling is *per se* unlawful. Facts consistent with a liberal reading of Smith's allegations have been found by other courts to state a claim upon which plaintiffs are entitled to offer further proof.[6] *See Jensen v. Clarke,* 94 F.3d 1191 (8th Cir.1996) (*supra* note 2); *Nami v. Fauver,* 82 F.3d 63 (3rd Cir.1996) (double celling can amount to Eighth Amendment violation if combined with other adverse conditions such as allegations that plaintiffs were subject to sexual assaults and that defendant prison officers were deliberately indifferent to potential for this type of harm); *cf. also Bolton v. Goord,* 992 F.Supp. 604 (S.D.N.Y.1998) (plaintiffs failed to establish a Eighth Amendment violation when,

at trial, it was established that there were only "isolated, de minimis incidents" of violence, and plaintiffs failed to establish that they were "living in risk of future physical harm arising from violence among double-celled inmates"); *Madyun v. Thompson,* 657 F.2d 868, 875 (7th Cir. 1981)[7]. Plaintiff's double celling allegations are sufficient to state a claim and defendants' claim of qualified immunity necessarily can only be considered on a developed factual record.

All of defendants' grounds for dismissing Smith's challenges to the DOC disciplinary system go beyond the pleadings. Whether Smith "was given due process which meets the standards of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ]," Mem. Supp. [Doc. # 31] at 5, requires a factual basis, not simply defendants' declaration that Smith "was given notice prior to the hearing, he was afforded the opportunity to have a staff advocate, he was given the opportunity to present witness statements, he was given the opportunity to appear in person and offer testimony in his defense," *id.* at 5–6, particularly since Smith's complaint alleges that his advocates were biased. Additionally, defendants reference a state habeas which they claim precludes Smith's claim, but attach no copies of any rulings, transcripts or judgments for the Court's consideration.[8]

---

**6.** "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

**7.** "It has long been established that prisoners have rights under the Eighth Amendment to receive reasonable protection from harm inflicted by other inmates. While isolated acts of violence do not constitute cruel and unusual punishment, the complaint in the instant

case, construed liberally, alleges that such attacks are frequent and are caused by the overpopulation and understaffing of the prison. This is sufficient to state a claim upon which relief may be granted." (citations omitted).

**8.** While defendants reference Smith's Status Report [Doc. # 11] and his Supplement to Status Report [Doc. # 15] (both of which make reference to a proceeding in the Connecticut state courts), these documents are not "pleadings" in the case. *See* Fed.R.Civ.P. 7(a) (pleadings include only "a complaint and an answer; a reply to a counterclaim denom-

■ Defendants' only meritorious claim is that Smith's express request for restoration of good time credits in this § 1983 action is barred by *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), which requires that any challenge to the length of confinement (by, for example, a request for restoration of good time credits) be advanced in a habeas petition. However, inasmuch as Smith's challenges to the disciplinary procedures request prospective injunctive relief and challenge the conditions (rather than the length) of his confinement, such allegations are not foreclosed by *Edwards. See id.* at 648–649, 117 S.Ct. 1584 ("Ordinarily, a prayer for . . . prospective injunctive relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983.").[9]

■ Defendants also argued in their 12(c) motion that money damages may not be recovered against any defendant in his official capacity and that certain defendants lack the requisite personal involvement sufficient to support money damages in their individual capacities. However, Smith's complaint, which seeks both injunctive and monetary relief, makes no distinction between the defendants' individual and official capacities. Moreover, personal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity; thus, no defendant is entitled to complete dismissal from this case under defendants' arguments. Rather than draw distinctions that are not present in Smith's complaint and dismiss individuals in their individual capacity but not their official capacity and vice versa, the Court will construe Smith's complaint as seeking only injunctive relief against defendants who are being sued in their official capacities and/or who have insufficient personal involvement to be liable for money damages.

Lastly, Smith's unawareness of any procedural developments in the case after he filed his first motion to reopen is a factor favoring reopening. *Cf., e.g., Blois v. Friday*, 612 F.2d 938 (5th Cir.1980). The parties agree that Smith was transferred out of state for significant periods of time starting March 30, 2000. Smith's motion to reopen was granted April 19, 2000, [Doc. # 28], and the text of Smith's second motion to reopen shows a misunderstanding of the procedural posture of this case that is best explained by non-receipt of any papers subsequent to Doc. # 27. The Court credits Smith's uncontradicted claim that as a result of multiple prison transfers, he never received any indication of the status of this case, including the ruling granting reopening when settlement failed, defendants' second motion for judgment, the Court's Notice to Pro Se Litigant, and the second entry of judgment.[10] Smith

---

inated as such; an answer to a cross-claim; a third-party complaint[ ]; and a third party answer[ ]").

9. While *Edwards* indicates that standing may be an issue in such a claim, *id.,* defendants have not raised Smith's standing to seek this prospective injunctive relief.

10. Whatever duty a party may have to actively monitor the docket to ensure that a ruling has not been issued on a pending motion, *see, e.g., U.S. ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir.2001), must surely be modified to reflect the unique circumstances of *pro se* prisoners, whose receipt of informa-

tion is at the complete control of the state. *See Houston v. Lack*, 487 U.S. 266, 270–271, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (describing unique procedural hurdles faced by *pro se* prisoners, including difficulty monitoring docket for receipt of notice of appeal); *cf. also id.* at 271–272, 108 S.Ct. 2379 ("Unskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice

had promptly submitted his objection to defendants' first nearly-identical motion, and there is no basis for concluding that this time, particularly in the face of the Court's notice to him, that he refrained from submitting his objection the second time.

Defendants support their assertion that "clear prejudice would result to the defendants if this matter is reopened" only by the truism that "[m]emories of witnesses have dimmed and this matter has grown stale." [Doc. # 38] at 4. While one year passed between judgment and Smith's motion to reopen, the vagaries of litigation often entail longer delays in the resolution of cases and absent any particularized showing of lost witnesses or unusually dimmed memories, this period is not of itself so lengthy a period of time to presume prejudice. The fact that this is Smith's second motion to reopen is of no import, given that plaintiff's first motion to reopen was successful and the combination of factors described above necessitated the second.

 Lastly, defendants claim that Smith's motion was not made within a "reasonable time" as required by Fed. R.Civ.P. 60(b), inasmuch as there was a period of time in both 2000 and 2001 in which Smith was in Connecticut facilities and could have sought to reopen judgment.[11] Determination of whether a Rule 60(b)(6) motion is timely requires scrutiny of "the particular circumstances of the case, and balanc[ing of] the interest in finality with the reasons for delay." *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.1983) (*citing Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648 (2d Cir. 1979) and *Ashford v. Steuart,* 657 F.2d 1053 (9th Cir.1981) (per curiam)). In light of the unusual circumstances detailed above of judicial error combined with lack of notice to an involuntarily peripatetic *pro se* prisoner, the Court concludes that the interest in finality is outweighed by the interests of justice in a merits determination of claims, and that Smith's motion to reopen was made within a reasonable time.

### III. Conclusion

In conclusion, the Court determines that the factors outlined above, considered as a whole,[12] cannot be characterized as any of the enumerated factors of Fed.R.Civ.P. 60(b)(1)-(5), *see Warren v. Garvin,* 219 F.3d 111, 114 (2d Cir.2000), and together are of such a kind and degree as to justify the invocation of the Court's residual power under Rule 60(b)(6) to set aside the judgment and allow Smith's claims to proceed.

Thus, plaintiff's Motion to Reopen [Doc. # 35] is GRANTED; judgment is SET ASIDE; the Court's Ruling [Doc. # 33] granting defendants' motion for judgment on the pleadings is VACATED; and defen-

---

to those prison authorities and the date ultimately stamped on his notice.").

**11.** Defendants also appear to claim that there is a blanket one year limitation for the filing of any motion under Fed.R.Civ.P. 60(b), which cannot be extended. *See* [Doc. # 38] at 4 ("It is respectfully submitted that a district court cannot extend the one year outside the [sic] time limit of Fed.R.Civ.P. 60(b) under any circumstances.") However, as set out above, the one year time limit contained in Rule 60 does not apply to motions made un-

der subsection six of that Rule, which are subject only to the limitation that they must be made in a reasonable time. *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.1983).

**12.** Although legal error alone may be insufficient because a motion under Rule 60(b) is not a substitute for an appeal, *Matarese v. LeFevre,* 801 F.2d 98, 107 (2d Cir.1986), the circumstances presented here, considered together, are found to be sufficient.

dants' motion for judgment on the pleadings [Doc. # 30] is GRANTED as to Smith's claim for restoration of good time credits and DENIED in all other respects.

IT IS SO ORDERED.