Jeffrey A. WALKER, Plaintiff–Appellant,

v.

David JASTREMSKI, Charles Buerer, Frank Halloran, and Tedja Tjandra, Defendants–Appellees.

Docket No. 04–3671–PR.

United States Court of Appeals, Second Circuit.

Argued: Sept. 1, 2005.

Decided: Nov. 15, 2005.

---

Alfred U. Pavlis, Daly & Pavlis, LLC (Brendan J. LeMoult, on the brief), Southport, Conn., for Plaintiff–Appellant.

Robert B. Fiske, Assistant Attorney General, State of Connecticut, Hartford, Conn. (Michael P. Farrell, Corporation Counsel, City of West Haven, and Jerome A. Lacobelle, Jr., Deputy Corporation Counsel, City of West Haven, West Haven, Conn., on the brief), for Defendants–Appellees.

Before: NEWMAN, CALABRESI and STRAUB, Circuit Judges.

CALABRESI, Circuit Judge.

This case comes to us for the third time in its seesawing history. It concerns the application of the "prison mailbox" rule of *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), to a *pro se* prisoner's request from a state court for records pertinent to a prosecution against him that forms the basis for his civil rights suit against law enforcement officials. The prisoner, plaintiff-appellant Jeffrey A. Walker, argues that the district court erred in dismissing his complaint as barred by the three-year statute of limitations applicable to tort claims brought in Connecticut under 42 U.S.C. § 1983. We conclude that Walker's untimely filing was not attributable to mail in the prison system, and therefore that the prison mailbox rule is inapplicable to his case. Moreover, the circumstances of Walker's case do not warrant equitable tolling of the statute of limitations. We therefore affirm the judgment of the district court.

### Background

We assume familiarity with the procedural history of this case, much of which is summarized at *Walker v. Jastremski,* 159

F.3d 117 (2d Cir.1998), and *Walker v. Jastremski,* 274 F.3d 652 (2d Cir.2001). The case arises from a criminal prosecution brought against Walker in Milford Superior Court that was dismissed on April 16, 1991 for insufficient evidence. It is undisputed that the statute of limitations for a § 1983 suit arising from that prosecution ran from that date until three years thereafter, or April 16, 1994. *See* Conn. Gen. Stat. § 52–577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *Lounsbury v. Jeffries,* 25 F.3d 131, 133 (2d Cir.1994) (stating that actions brought under § 1983 must "borrow" the "most appropriate or most analogous" state statute of limitations).

■ On February 8, 1994, Walker delivered to prison officials, for mailing to Milford Superior Court, what he terms a Motion for the Production of Records. The "motion" requested from the court copies of the information and arrest warrant application from his 1991 prosecution, as well as a transcript of the April 16, 1991 hearing and a fee waiver application. As evidenced by a postal receipt, the court received Walker's document request three days later, on February 11, 1994. The state court clerk testified in the district court that such document requests generally are processed within three days of receipt. The court did not, however, mail the documents to Walker until May 5, 1994. He received the documents four days later, and, acting *pro se,* delivered his § 1983 complaint to prison officials for mailing to the district court on June 8,

1994, fifty-three days after the statute of limitations had run.[1]

## Discussion

### 1. The *Houston* Prison Mailbox Rule

In *Houston,* a prisoner delivered a notice of appeal from a district court's dismissal of his *pro se* habeas corpus petition to prison officials within the applicable filing limit. The notice of appeal was not filed with the court, however, until one day after the time limit. The Supreme Court held that for the purposes of Fed. R.App. P. 4(a)(1), a *pro se* prisoner's notice of appeal is deemed "filed" at the moment of delivery to prison authorities for forwarding to the district court.[2] *Houston,* 487 U.S. at 270, 108 S.Ct. 2379. Our court has since extended the so-called "prison mailbox" rule of *Houston* to a number of other federal filing requirements. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993) (civil complaints), *modified on other grounds,* 25 F.3d 81 (2d Cir.1994); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (per curiam) (administrative complaints); *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001) (habeas petitions).

Walker argues that *Houston* requires that the delay between his record request and his receipt of the records not apply against the three-year statute of limitations. Alternatively, he argues that "*Houston*-like" principles of equitable tolling entitle him to relief from the statute of limitations.

In order to accept Walker's argument as to the scope of the prison mailbox rule, we would have to extend *Houston* and its

---

**1.** The complaint was not filed in the district court until November 28, 1994. It is well-settled, however, that the date of filing a federal complaint by a *pro se* prisoner is, for statute of limitations purposes, the date of delivery to prison authorities. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993), *modi-*

*fied on other grounds,* 25 F.3d 81 (2d Cir. 1994).

**2.** The prison mailbox rule has since been codified within the Federal Rules. *See* Fed. R.App. P. 4(c)(1).

progeny in three ways. First, we would have to conclude that *Houston* may, in certain instances, apply to delays in filing that are traceable to parties other than prison officials; in this case, the state court clerk's office. Second, we would have to hold that the prison mailbox rule controls delays that do not concern the mail. And, third, we would have to find that *Houston* does not merely deal with "filing" requirements, but may apply as well to a request for documents from a third party.

■ Because we conclude that the prison mailbox rule does not apply to delays that implicate neither prison officials nor the mails, we need not reach the question of whether it applies only to filings. In holding that the requirements of Fed. R.App. P. 4(a)(1) should permit a prisoner to deem his notice of appeal "filed" at the moment of delivery to prison authorities, the *Houston* Court emphasized that *pro se* prison litigants, unlike others, cannot control when documents are delivered to the court for processing. "Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* pris-

oner is forced to do so by his situation." *Houston,* 487 U.S. at 271, 108 S.Ct. 2379.

■ As indicated by the postal receipt that Walker submitted, which the State does not challenge, his request was delivered to the court clerk on February 11, 1994, three days after Walker handed it to prison officials. That is, the date on which the court "received the notice" was just as "establish[ed]" in this case as it would have been for "other litigants." Thus, and most significantly, the crucial delay in the instant case was attributable not to the vagaries of the mails, nor to prison bureaucracy, but to the idiosyncracies of the clerk's office. In other words, literally, the "prison mailbox" rule was not implicated.[3]

Our cases cast considerable doubt on the proposition that *Houston* applies to delays other than those that derive directly from the fact of incarceration and from problems involving prison mail. In *Knickerbocker v. Artuz,* 271 F.3d 35 (2d Cir.2001) (per curiam), we declined to apply the prison mailbox rule to the late filing of a notice of appeal that a *pro se* prisoner had given to his sister for mailing, rather than to prison officials. Adopting the rule of several other circuits, we reasoned that "unlike the situation addressed in *Houston,* the delay in this case is not attributable to prison officials." *Id.* at 37. In *Dory,* which extended the prison mailbox rule to the filing of civil complaints within the applicable statute of limitations, we

---

**3.** Walker argues that, were he not incarcerated, he could visit the clerk's office in person in an effort to expedite the handling of his request. Whether such an effort would be successful, however, is entirely speculative. And the "prison mailbox" disadvantages that form the foundation of *Houston* are actual, not speculative. That is, a non-incarcerated or counseled litigant has *absolute* control over whether to hand-deliver a document to the court rather than submit to the uncertainties of the mails, while a *pro se* prisoner has no similar choice. Such a prisoner must rely on the mails *and* the prison bureaucracy. And it is that necessary reliance that *Houston* sought to address. As to post-delivery delays, instead, neither ordinary litigants nor *pro se* prisoners can do more than hound a dilatory clerk's office, the first in person, the second by mail. And the differences between these two ways of hounding, though real, and probably to the prisoner's disadvantage, are, like many other prisoner disadvantages, categorically dissimilar from the *pro se* prisoner mailbox disadvantages that *Houston* sought to correct.

stated that "[t]he foundation of *Houston* is the inherent disadvantage suffered by the *pro se* litigant in his inability to monitor the course of his litigation." *Dory*, 999 F.2d at 682. Since the delay that Walker complains of would be substantially outside the control of even an unincarcerated litigant, his "inherent disadvantage" pretty much disappeared upon delivery of his document request to the state court. Accordingly, *Houston* does not apply to the facts of this case.[4]

## 2. Equitable Tolling

■ Since Walker cannot avail himself of *Houston's* mailbox rule, we are left with his argument that the doctrine of equitable tolling should apply to the circumstances of his case. We have applied equitable tolling only in "rare and exceptional circumstances," where we found that "extraordinary circumstances" prevented a party from timely performing a required act, and that the party "acted with reasonable diligence throughout the period he [sought] to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir.2004) (internal quotation marks omitted).

In order for "extraordinary circumstances" to have prevented Walker from timely filing his complaint, the information he sought from the state court must have been necessary for that complaint to have been legally sufficient. The district court adopted the magistrate judge's finding that, at the time of his hearing in April 1991, Walker "knew the facts supporting his claims of ineffective assistance of counsel, false arrest, submission of a false affi-

davit in support of his arrest warrant, improper identification procedures, and malicious prosecution." *Walker v. Jastremski*, No. 94–cv–2018, 2004 WL 825808 at 7, 2004 U.S. Dist. LEXIS 6380, at * 23–24 (D.Conn. Mar. 12, 2004). Walker had a copy of the arrest warrant and was aware of its contents; he had identified all of the parties he would name as defendants; and in a letter to the state court judge, he had specified the issues he intended to raise. *Id.* 2004 WL 825808 at 5, 2004 U.S. Dist. LEXIS at *16.

Walker does not appear to dispute these factual findings. Nor does he at any point assert that he believed that he needed *more* data in order to file his suit. He contends, instead, that as a *pro se* litigant, he could not have been expected to remember this information three years after the prosecution. But if this is so, then the late filing of Walker's complaint was caused not by the dilatory conduct of the court clerk's office, but by Walker's failure to remember what he earlier knew, by his putative misplacement of relevant documents, and by his inexplicable delay given that memory lapse—until shortly before the statutory deadline—in asking for documents that might refresh his recollection. These reasons for delay cannot, in the ordinary course of things, support equitable tolling. *See Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.2001) (noting that the "exceptional circumstances" giving rise to equitable tolling must be "beyond [the] control" of the party who seeks to benefit from it).[5]

---

**4.** The concurrence suggests that what we hold today would have undesirable consequences for people "confined to a mental hospital (or in any other governmental custody)." We wish to make clear that our holding is in no way meant to preclude a later panel, if it deems it appropriate, from devising a *Hous-*

*ton*-like rule that might deal appropriately with people in such circumstances.

**5.** Moreover, as the magistrate judge noted, even if Walker was unsure that he had all the data needed to pursue his claim forcefully, he could have filed a timely complaint and sought to amend it later after receipt of the transcript. For the Supreme Court has stat-

### Conclusion

Because *Houston's* prison mailbox rule does not apply to processing delays in the state court clerk's office, and because Walker has not met his burden of demonstrating that the clerk's delay prevented his timely filing, he is not entitled to tolling of the statute of limitations. We therefore AFFIRM the judgment of the district court.

JON O. NEWMAN, Circuit Judge, concurring.

This is a very simple appeal that can be readily affirmed by making one decision concerning the so-called "prison mailbox rule" and one decision concerning equitable tolling. Instead of affirming on available narrow grounds, the majority has needlessly complicated the case in six ways. With respect to the prison mailbox rule, the majority has (1) made one unnecessary and questionable ruling with respect to that rule and (2) held open an issue concerning that rule that can be readily decided; and, with respect to equitable tolling, (3) asserted, without citation of authority, a broad and questionable rule concerning that doctrine, (4) failed to appreciate the realities facing a prisoner who wishes to file a *pro se* lawsuit, (5) read the papers filed by court-appointed counsel in an extremely narrow fashion, and (6) rejected such tolling on an array of factors premised on that narrow reading. Deeming it more prudent to affirm on the simplest grounds, I concur in the result for the following reasons.

### I. The Prison Mailbox Rule

The Appellant contends that the prison mailbox rule, enunciated by the Supreme Court in *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), applies to exclude from the applicable limitations period the entire interval between the date when he handed prison authorities for mailing to a state court a request for documents and the date when he received the requested documents. The majority asserts that to accept the Appellant's contention we would have to extend *Houston* in three respects: to apply to delays by parties other than prison officials, to apply to delays that do not concern the mail, and to apply to documents other than those required to be filed. The majority rejects the first two extensions and leaves open the third.[6]

In my view, the third extension is the most easily rejected. The Supreme Court informed us in *Houston* that "[t]he question we decide in this case is whether under Federal Rule of Appellate Procedure 4(a)(1) such notices [of appeal] are to be considered *filed* at the moment of delivery to prison authorities for forwarding or

---

ed, "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed. R.Civ.P. 8(a)). Furthermore, although conclusory or general allegations are insufficient to state a claim for conspiracy under § 1983, *see, e.g., Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002), Walker does not argue (and has not demonstrated) that the warrant and transcript were necessary to make specific allegations concerning the existence of a conspiracy.

**6.** Once the majority has rejected the first extension, it is not clear why it continues on to reject the second extension. And by leaving open the third extension issue, which is readily resolved, the Court invites needless litigation endeavoring to apply the prison mailbox rule to all sorts of documents that those in custody might wish to obtain, beyond documents that are required to be filed.

at some later point." *Id.* at 268, 108 S.Ct. 2379 (emphasis added). *Houston* concerns a filing requirement. It holds that a time limit for filing a document is satisfied by handing the document to prison officials for mailing within the applicable time period. I would not suggest that the filing rule of *Houston* is limited to the precise document at issue in that case—a notice of appeal. But to extend the decision beyond documents required to be filed would be to ignore not only the holding but the rationale of the holding: a prisoner should be deemed to comply with a filing requirement when he takes the reasonable step of handing to prison officials for mailing the document he wishes to file. Because the Appellant handed to prison officials for mailing a document not required to be filed—a request for documents from a state court—*Houston* does not apply to exclude any time from the limitations period.

Instead of rejecting the Appellant's *Houston* argument on this straightforward and narrow ground, the majority rules that *Houston* does not help the Appellant because it "does not apply to delays that implicate neither prison officials nor the mails." [*Ante* at 563] I can readily agree that *Houston* does not apply unless a mailing is involved, but this case does involve a mailing—a mailing of a request for court documents—and the Appellant seeks a ruling that the mailing of that request is covered by *Houston*. I agree that it is not, but the reason is that the mailed request was not required to be filed, not that the mails were not involved. More important, it is far from clear to me that *Houston* applies only to delays attributable to prison officials. If a person confined to a mental hospital (or in any other governmental custody) handed to an institutional employee concerned with mail a document required to be filed, there would be a strong argument that under *Houston* that

document is deemed filed when handed to the employee.

## II. Equitable Tolling

It is a well settled principle that a person claiming the benefit of equitable tolling must act with diligence. *See Pace v. DiGuglielmo,* —— U.S. ——, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005). In this case, the Appellant waited more than two and three-quarter years of the three year limitations period before handing to prison officials for mailing his request for state court documents. Regardless of why he wanted those documents, his delay was entirely unjustified, and this delay, in and of itself, precludes equitable tolling of the limitation period.

Instead of rejecting the Appellant's equitable tolling argument on this straightforward and narrow ground, the majority embarks on a complicated analysis that includes several questionable steps. First, the majority states, without citation of authority, that equitable tolling is not applicable unless the information that the Appellant sought from the state court was "necessary to [his] complaint to have been legally sufficient." [*Ante* at 564] Why the flexible doctrine of equitable tolling should be limited to a request for documents that are necessary to enable a prospective plaintiff, especially an incarcerated *pro se* plaintiff, to resist a motion challenging the legal sufficiency of his complaint, is neither explained nor obvious. Second, the majority fails to consider that an incarcerated *pro se* prisoner might reasonably believe that documents are needed to strengthen his lawsuit or at least to make sure that it can withstand a motion to dismiss, even though he does not understand that, without the documents, his lawsuit would satisfy federal standards of legal sufficiency. Third, the majority focuses narrowly on the argument of the Appellant's court-ap-

pointed counsel that the Appellant needed the documents because he could not remember certain details of the state court criminal case that underlies his federal civil rights complaint. Such a memory loss is not inherently incredible, and, in any event, is not the only reasonable basis for an incarcerated *pro se* litigant to have sought state court records of his criminal case. Finally, after limiting the Appellant to a memory loss contention, the majority rejects his equitable tolling argument because such a memory loss is not attributable to the state court's delay in sending the requested documents. Of course, it is not, but the Appellant should not be limited to a memory loss argument, nor should he be faulted for reasonably thinking that the requested court documents should be obtained before filing his federal lawsuit.

\* \* \* \* \* \*

In sum, the prison mailbox rule, which applies only to documents required to be filed, does not apply to the Appellants's request for state court documents because the request was not required to be filed within a prescribed time limit, and equitable tolling does not apply to the delay in obtaining the state court records because the Appellant unduly delayed, without justification, in making the request. For these simple reasons, I concur in the Court's result of affirming the judgment of the District Court.