DLD-214                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4519
_____

UNITED STATES OF AMERICA

v.

MICKEY J. RIDINGS,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-93-cr-00313-002)
District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
March 27, 2014
Before:  SMITH, HARDIMAN and GREENBERG, Circuit Judges

(Opinion filed: June 16, 2014)
_____

OPINION
_____

PER CURIAM

       Pro se appellant Mickey Ridings appeals the District Court's order denying his

petition for a writ of coram nobis.  We have jurisdiction pursuant to 28 U.S.C. § 1291,

and we review the District Court's legal conclusions de novo and its factual findings for

clear error.  Mendoza v. United States, 690 F.3d 157, 159 (3d Cir. 2012).  Because

Ridings's appeal presents no substantial question, we will summarily affirm the District Court's order. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

Ridings was convicted in the District Court in 1994 of 84 counts of wire fraud in violation of 18 U.S.C. § 1343, and the District Court sentenced him to 24 months' imprisonment. The charges concerned Ridings's operation of American Precious Metals Corporation ("AMPM"), a business that Ridings co-owned. In short, Ridings convinced Jaydee Miller, the president of Pyromet, a company with whom AMPM conducted regular business, to advance money to AMPM under false pretenses. Ultimately, Pyromet lost $523,000 in these transactions.

Ridings appealed his conviction to this Court, and we affirmed. See United States v. Ridings, 72 F.3d 124 (3d Cir. 1995) (table). In 1995, Ridings filed a motion under 28 U.S.C. § 2255 in the District Court. The District Court denied the motion, and we again affirmed. See United States v. Ridings, 111 F.3d 128 (3d Cir. 1997) (table). Next, in 1997, Ridings filed a document requesting a writ of coram nobis or relief under Rule 60(b) of the Federal Rules of Civil Procedure. The District Court denied relief, and we affirmed the denial of the petition for coram nobis and refused to issue a certificate of appealability to permit Ridings to appeal the denial of the Rule 60(b) motion.

Over a decade later, in 2010, Ridings filed the petition for coram nobis that is at issue here, claiming that he had discovered new evidence establishing his innocence. The District Court denied the petition, and Ridings filed a timely notice of appeal.

The writ of coram nobis may be used to attack an allegedly illegal conviction

2

when the petitioner, like Ridings, is no longer in custody for purposes of § 2255. Mendoza, 690 F.3d at 159. Coram nobis is reserved for the correction of a "fundamental error" for which "there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier." United States v. Stoneman, 870 F.2d 102, 105-06 (3d Cir. 1989). This relief is available in only exceptional circumstances; indeed, the Supreme Court has stated "it is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996) (alteration, quotation marks omitted).

Ridings presents four types of information in support of his petition: (1) a report from a private investigator who recently interviewed members of the jury in Ridings's criminal case; (2) Miller's grand-jury testimony, which, Ridings argues, contradicts Miller's trial testimony; (3) a report from a certified public accountant who examined certain AMPM financial documents; and (4) an affidavit from Ridings in which he purports to remember a critical and exculpatory conversation that he had with Miller in 1988. We agree with the District Court that Ridings is not entitled to coram nobis relief.

As an initial matter, we will accord no weight to the report from Ridings's private investigator. The District Court's Local Rules prohibit post-trial contact with jurors without Court authorization, and Ridings did not seek permission from the Court. See E.D. Pa. Cr. R. 24.1(c). This rule advances the important purpose of protecting jurors from harassment, see Cuevas v. United States, 317 F.3d 751, 753 (7th Cir. 2003), and we will thus strictly enforce the rule here.

3

Moreover, Ridings's claims based on Miller's grand-jury testimony and the accountant's report are essentially duplicative of claims that Ridings has previously raised. Ridings obtained the grand-jury testimony in 1995, and raised the precise claim he raises now concerning that testimony in both his appeal of the denial of his § 2255 motion and in his joint petition for coram nobis/motion under Rule 60(b). Further, he possessed the AMPM financial records at the time of his trial, and claimed that those documents established his innocence in his § 2255 motion (and even included an affidavit from another accountant).[1] Coram nobis is "available to bring before the court that pronounced the judgment errors in matters of fact which had not been put in issue or passed upon," United States v. Addonizio, 442 U.S. 178, 186 (1979); because Ridings's claims "amount to hardly more than regurgitation of the claims he has already presented in his § 2255 petition . . . or claims that he reasonably could have raised in that petition, it cannot be said that he has made the necessary showing of a 'complete miscarriage of justice,'" United States v. Esogbue, 357 F.3d 532, 535 (5th Cir. 2004).

Finally, Ridings contends that he recently remembered, 22 years after the fact, a conversation that he had with Miller that led to "[t]he entire case before the court today."

---

[1] Moreover, we note that Ridings's accountant has no personal knowledge of the events at issue in this case and merely interpreted a variety of financial documents. On appeal of the District Court's denial of his § 2255 motion, Ridings relied on these same documents to attack his conviction. We were not persuaded, stating, "the alternate interpretation of the balance sheets offered by Ridings is meaningless. Even if the balance sheets conformed to certain accounting principles, proper bookkeeping does not undercut the fact that receipt of Pyromet' money, however documented, was accomplished deceitfully." That same conclusion applies with full force here.

Even putting aside the fact that Ridings's sudden remembrance stretches credulity, he is entitled to no relief. Ridings has not alleged any medical impairment that would affect his memory in this way; in these circumstances, his mere forgetfulness does not cause the type of fundamental error that can be remedied via coram nobis. Cf. Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (holding that party's "failure to remember what he earlier knew" did not present exceptional circumstances justifying equitable tolling).

Accordingly, we will summarily affirm the District Court's judgment.