**UNITED STATES of America, Appellee,**

**v.**

**Alan R. STONEMAN, Appellant.**

**No. 88–5294.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 15, 1988.

Decided March 13, 1989.

As Amended April 12, 1989.

Rehearing and Rehearing In Banc
Denied April 13, 1989.

Richard R. Nelson, II (argued), James J. Ross, Neil F. Siegel, Alder Cohen & Grigsby, P.C., Pittsburgh, Pa., for appellant.

James J. West (argued), U.S. Atty.'s Office, Harrisburg, Pa., for appellee.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

OPINION OF THE COURT *

HUTCHINSON, Circuit Judge.

I.

Appellant Alan R. Stoneman appeals from the United States District Court for the Middle District of Pennsylvania's order denying his petition for a writ of error *coram nobis.* Stoneman seeks to vacate his conviction for conspiracy under 18 U.S.C.A. § 371 (West 1966) to violate the mail fraud statute, 18 U.S.C.A. § 1341 (West 1984) and to utilize a facility of interstate commerce in violation of the Interstate Travel in Aid of Racketeering Act (Travel Act), 18 U.S.C.A. § 1952 (West 1984), based on the United States Supreme Court's recent decision in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). I conclude in Part V that the district court's charge on mail fraud only required the jury to find a loss of intangible rights in order to convict, and therefore, in light of *McNally,* was error. However, a majority of the panel believes that, under the evidence, just as in the companion case of *United States v. Asher,* 854 F.2d 1483 (3d Cir.1988), the loss of money was implicit in the intangible rights scheme. More specifically, the majority is unable to hypothesize a set of circumstances under which the jury could have found Stoneman guilty of depriving the citizens of the Commonwealth of Pennsylvania of their right to honest government (an impermissible intangible right under *McNally*) without also having found that Stoneman was involved in a scheme the sole purpose of which was to insure that a company known as CTA, Ltd. (CTA) obtained a no-bid Federal Insurance Contribution Act (FICA) recovery contract at a substantially greater cost to the Commonwealth of Pennsylvania than a contract obtained through traditional competitive bidding. The majority believes that the indictment, evidence and jury charge in this case are essentially the same as *Asher,* and that on the authority of *Asher* the conviction must be affirmed.

II.

Stoneman and others were indicted in October of 1984 by a federal grand jury and charged with conspiracy, 18 U.S.C.A. § 371, violations of the Travel Act, 18 U.S.C.A. § 1952(a)(3), and mail fraud, 18 U.S.C.A. § 1341. The indictment alleged a scheme to obtain FICA recovery contracts from state and local entities by bribing public officials.[1] Stoneman and co-defendant William T. Smith, Jr. pled not guilty and were tried before a jury. After a lengthy trial, the jury found Smith guilty of conspiracy, four counts of mail fraud and four counts of utilizing a facility of interstate commerce in aid of racketeering. The jury convicted Stoneman only of conspiracy. Both defendants were sentenced to prison terms and fined.

Smith and Stoneman appealed their convictions on numerous grounds. They did not, however, argue that the indictment or jury instructions relied on an intangible rights theory and were therefore invalid under the mail fraud statute. We affirmed their convictions in *United States v. Smith,* 789 F.2d 196 (3d Cir.1986). Both defendants petitioned the Supreme Court for certiorari, which was denied. *Smith v. United States,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); *Stoneman v. United*

---

* Judges Becker and Scirica join Parts I–IV and Part VI of this opinion and with respect to them it constitutes the Opinion of the Court. Part V only expresses the views of the opinion writer.

1. A more extensive discussion of the facts is contained in our opinion affirming Stoneman's conviction on direct appeal. *United States v. Smith,* 789 F.2d 196 (3d Cir.1986).

*States,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). After an unsuccessful motion before the district court for a new trial based on newly discovered evidence, Stoneman served his four month prison sentence and paid his $10,000 fine.

On June 24, 1987, the Supreme Court held in *McNally* that the mail fraud statute did not encompass a scheme to defraud which deprived the victims of their intangible right to good and honest government.[2] In November of 1987 Stoneman petitioned the district court for a writ of error *coram nobis* to vacate his conviction based on *McNally.* The district court denied Stoneman's petition, concluding that *McNally* did not apply to collateral attacks on final decisions.[3] In the alternative, the district court reviewed the indictment, the evidence introduced at trial and the jury instructions and concluded that the conviction was valid under *McNally* and our application of *McNally* in *United States v. Piccolo,* 835 F.2d 517 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988). Stoneman now appeals.

### III.

The question before us is not whether *McNally* is retroactive. This Court recently held that *McNally* applies on a collateral attack of a final conviction in *United States v. Osser,* 864 F.2d 1056 (3d Cir. 1988).[4] As in *Osser,* the question here is whether an error in jury instructions under *McNally* is a *fundamental* error justifying vacation of a final conviction on collateral review by issuance of a writ of error *coram nobis.*[5]

Those substantive errors which result in a person's charge and conviction for something not a crime are fundamental. In determining what is not a crime, authoritative Supreme Court cases are as much a part of the law as the statute itself. Hence, when the Supreme Court decided in *McNally* that the statute punished only persons who caused tangible loss to victims, that requirement became a part of the definition of the crime. A person charged in an indictment that did not include a loss of tangible rights or convicted by evidence that did not show a violation is punished for something not a crime and is entitled to collateral review. If a defendant were convicted and punished "for an act that the law does not make criminal[, t]here can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief." *Davis v. United States,* 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (in *habeas corpus* proceeding, petitioner may assert change in the substantive law after his conviction).

### IV.

The writ of error *coram nobis* is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C.A. § 1651(a) (West 1966).[6] *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed.2d 248 (1954). It is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no

2. On October 21, 1988, Congress amended the definition of "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services," thereby overturning *McNally* legislatively. Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7603, 134 Cong.Rec. H11207 (daily ed. Oct. 21, 1988) (approved by the President on Nov. 18, 1988) *(to be codified at 18 U.S.C. § 1346).*

3. The district court relied on its earlier decision in *United States v. Smith,* 675 F.Supp. 978 (M.D. Pa.1987) in which it held that *McNally* did not apply retroactively to a petition for a writ of *habeas corpus* under 28 U.S.C.A. § 2255 (West 1971).

4. The government conceded in its brief that *McNally* applied retroactively.

5. *Osser* held in part that a writ of error *coram nobis* was not available because the appellant waived the issue by not raising it on direct appeal. Osser's appeal was taken in 1972, well before the issue was resolved. *See United States v. Boffa,* 688 F.2d 919, 926 (3d Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983). Such an argument is not available to the government here.

6. Federal Rule of Civil Procedure 60(b) abolished the writ of error *coram nobis* in civil cases.

longer "in custody" for purposes of 28 U.S.C.A. § 2255. The petitioner must show that he is suffering from continuing consequences of the allegedly invalid conviction. *Id.* at 512–13, 74 S.Ct. at 253–54.

 Use of the writ is appropriate to correct errors for which there was no remedy available at the time of trial and where "sound reasons" exist for failing to seek relief earlier. *Id.* at 512, 74 S.Ct. 253. "Only where there are errors of fact of 'the most fundamental kind, that is, such as to render the proceeding itself irregular and invalid', [sic] can redress be had." *United States v. Cariola,* 323 F.2d 180, 184 (3d Cir.1963) (quoting *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914)). The error must go to the jurisdiction of the trial court, thus rendering the trial itself invalid. An error which could be remedied by a new trial, such as an error in jury instructions, does not normally come within the writ. *See Mayer,* 235 U.S. at 69, 35 S.Ct. at 19–20; *United States v. Gross,* 614 F.2d 365, 368 (3d Cir.) (per curiam) (conduct of deputy marshal, who annoyed several jurors and expressed romantic interest in particular juror, insufficient to warrant issuance of writ), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980). Earlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise. *Cariola,* 323 F.2d at 184.

*Coram nobis* is an extraordinary remedy, and a court's jurisdiction to grant relief is of limited scope. *Id.* at 184. "The interest in finality of judgments dictates that the standard for a successful collateral attack on a conviction be more stringent than the standard applicable on a direct appeal." *Gross,* 614 F.2d at 368. It is even more stringent than that on a petitioner seeking *habeas corpus* relief under § 2255. *See Osser,* 864 F.2d at 1060–61; *United States v. Keogh,* 391 F.2d 138, 148 (2d Cir.1968) (unlike *habeas,* where part of sentence remained unserved, no opportunity or incentive in *coram nobis* setting to

retry defendant using newly discovered evidence where sentence already served).

 Here, the indictment alleges and the evidence introduced by the government shows that Stoneman schemed to defraud the Commonwealth of Pennsylvania by securing no-bid FICA contracts through the bribery of public officials and did, in fact, cause a money loss to the Commonwealth through such a scheme.

The indictment against Stoneman charges a valid 18 U.S.C.A. § 1341 offense under *McNally.*[7] Count I alleges:

> 3. It was part of said conspiracy and scheme or artifice to defraud and use the facilities of interstate commerce to promote, manage, establish, carry on and facilitate bribery that: ... (h) The defendants would obtain lucrative contracts from state and local government without competitive bidding, notwithstanding the fact that others were willing to perform substantially identical FICA recovery work at a much lower cost.

Appendix (App.) at 33, 37–38. Count I also alleges that one of the objects of the conspiracy was "to defraud the citizens of the Commonwealth of Pennsylvania, and other states where the defendants did business, of the tangible monetary savings and financial benefits" by corruptly influencing various elected public officials. *Id.* at 39. Although the indictment also alleges a scheme to defraud the citizens of Pennsylvania of their intangible rights to good and honest government, the quoted passages are sufficient to allege a scheme designed to defraud the citizens of money, a violation of § 1341 under *McNally.* Stoneman has failed to show that the earlier proceedings were "irregular and invalid," in that the district court had no jurisdiction to try him for the alleged crimes.

 We have also considered whether the evidence presented at trial was sufficient to establish that Stoneman and his co-defendants schemed to cause a loss of money to the citizens of Pennsylvania. We agree with the district court that it was

---

**7.** If the indictment failed to allege a crime, then the district court would have been without juris-diction to enter judgment against the defendant.

sufficient to show that the defendants schemed to cause such a loss. As we discussed in affirming Stoneman's conviction on direct appeal, his company, CTA fraudulently obtained a FICA recovery contract for Pittsburgh employees at a cost of $150,000, even though another contractor had bid $35,000. *Smith,* 789 F.2d at 199. The defendants also fraudulently tried to obtain a FICA recovery contract for Pennsylvania state employees at a cost to the Commonwealth of $8,000,000. Evidence showed that the contract could have been performed in-house for $300,000 and that an accounting firm eventually performed it for no more than $1,300,000. *Id.*

### V.

Stoneman argues that the jury was instructed that it need not find any tangible property loss to convict the defendants of mail fraud or conspiracy to commit mail fraud and that this instruction was fundamental error entitling him to a vacation of his sentence by issuance of a writ of error *coram nobis.*[8]

 After reviewing the jury instructions in their entirety, I believe that the district court erred, under *McNally,* in instructing the jury that it could convict Stoneman of mail fraud solely on an intangible rights theory. The court charged:

> The object of the scheme need not be money or any form of tangible property. A scheme to defraud the citizens of a governmental unit of the good and faithful services of their employees and elected public officials can come within the meaning of scheme or artifice to defraud as set forth in the mail fraud statute.

App. at 187. The mail fraud objective was alleged to be "a scheme to defraud the citizens of the Commonwealth of Pennsylvania of the faithful services of elected public officials and public employees by corruptly influencing them by bribery." *Id.* at 224. The jury was not instructed that it had to find a scheme designed to cause a tangible money or property loss to

the Commonwealth of Pennsylvania in order to convict the defendants. The district court also failed to specifically refer to the money losses to the Commonwealth or state counties caused by CTA's procurement of a no-bid contract.

 I believe these jury instructions distinguish this case from those given in *United States v. Piccolo,* 835 F.2d 517 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988), and *United States v. Asher,* 854 F.2d 1483 (3d Cir.1988). In *Piccolo,* the jury was instructed that it must find that the government proved that the defendant schemed to defraud the victims of both their intangible " 'right to the honest, faithful and loyal services of its employees ... *and further to defraud* [the victims] *of money.'* " *Piccolo,* 835 F.2d at 520 (emphasis in original). Likewise, in *Asher,* which involved the same underlying scheme to defraud the Commonwealth of Pennsylvania as in the present case, the jury instructions made reference to both tangible and intangible losses to the state. *Asher,* 854 F.2d at 1494, 1495. In *Asher,* the district court charged the jury that it may find an intent on the part of the defendants to defraud "if it finds that the defendants sought 'to deceive for the purpose of either causing some financial loss to another, or losses of an intangible nature, or bringing about financial gain to one's self, or for any of these purposes.' " *Id.* at 1495. In describing the objects of the conspiracy to defraud, the court instructed that " '[o]ne object involves a statutory right, and one object involves a property right.' " *Id.* In conclusion, the *Asher* court instructed that:

> "Where the statutory duty of refraining from bribery is concerned, or if you find that one of the objects of the conspiracy was *to defraud of the tangible savings coming from an impartially awarded contract,* you do not have to consider the public official defendant first, but may consider both defendants and find either

---

8. Stoneman argues that his entire conviction must be vacated, even though he was also convicted of conspiring to violate the Travel Act.

Because we conclude that Stoneman's conviction is valid under *McNally,* we need not address this argument.

one or the other, or both, either guilty or innocent, as the facts indicate."

*Id.* (quoting from Appendix at 1540–41) (emphasis in original). Because we were "unable to hypothesize a set of circumstances under which this jury could have found Asher guilty of depriving the citizens of the Commonwealth" of Pennsylvania of their intangible rights without also finding a loss of money due to the obtaining of no-bid contracts, *id.,* we found that these "either/or" instructions satisfied the precepts of *McNally.*[9]

The instructions in our case seem to me closer to those reviewed in *United States v. Zauber,* 857 F.2d 137 (3d Cir.1988). In *Zauber,* the jury was instructed that a defendant need not "realize any gain from the scheme [to defraud], nor that the intended victim suffered any loss. . . . I hereby charge you that it is *absolutely irrelevant* whether or not there was any loss in pension benefits. . . ." *Id.* at 145 (emphasis in original). In *Zauber,* we found that the jury was "clearly instructed solely on an intangible rights theory." *Id.* Since the indictment also failed to charge a money or property loss to the victim, we dismissed those counts of the indictment charging mail and wire fraud violations.

An error in jury instructions is normally remedied by the grant of a new trial. Such a remedy is not appropriate for *coram nobis,* since Stoneman has already served his sentence and seeks only to have its collateral effects alleviated. The United States Court of Appeals for the Seventh Circuit has stated that "[a]n error in the jury instructions—when a valid conviction could have been had under different instructions . . .—is not the sort of fundamental defect that produces a complete

miscarriage of justice." *United States v. Keane,* 852 F.2d 199, 205 (7th Cir.1988).

The indictment against Stoneman charged and the evidence the jury heard established an offense within the meaning of § 1341, as interpreted by the Supreme Court in *McNally.* Stoneman did not suffer a conviction for conduct that was not criminal. Accordingly, I believe he failed to meet the burden imposed on him in a *coram nobis* proceeding of overcoming the presumption that his conviction was valid. It is not enough for him to show that it *may* have been invalid. This conclusion, I believe, properly balances the tension between principles of finality and the law's ideal of seeing that no man is improperly convicted. It also serves to distinguish the type of review available on direct appeal from the less searching examination into trial error available on collateral review through the more limited remedy of *coram nobis.*[10] Finally, it is not inconsistent with cases on direct appeal holding it is error to instruct a jury that a mail fraud conviction under § 1341 can be based solely on a victim's loss of intangible rights. *See, e.g., Zauber,* 857 F.2d at 145.

### VI.

In short, we hold that *McNally* is retroactive, that Stoneman has not shown fundamental error and that he has not overcome the presumption that he was properly convicted of mail fraud, a showing essential to the issuance of a writ of error *coram nobis.*

Therefore we will affirm the district court's order denying Stoneman's petition for a writ of error *coram nobis.*

---

9. *Asher* seems to me to broaden *Piccolo* 's interpretation of *McNally.* While I believe the instructions in this case are sufficiently different to distinguish those given in *Asher,* I nevertheless feel bound by that opinion to reach the conclusion that a loss of money to the Commonwealth was sufficiently established to uphold this conviction against collateral attack.

10. For example, *see Chiarella v. United States,* 445 U.S. 222, 237 n. 21, 100 S.Ct. 1108, 1119 n. 21, 63 L.Ed.2d 348 (1980) (on direct appeal,

Court could not affirm criminal conviction on basis of theory not presented to jury); *United States v. Dansker,* 537 F.2d 40, 51 (3d Cir.1976) (new trial required where jury instructed on alternate theories, only one of which sufficient to justify conviction); *but see Asher,* 854 F.2d at 1495 (although jury instructed on alternate theories, one of which invalid under *McNally,* conviction remained valid because loss of money implicit in intangible rights scheme).