

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-2006

# Evola v. Carbone

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2508

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Evola v. Carbone" (2006). *2006 Decisions.* Paper 693.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/693

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2508

———

VITO EVOLA, Appellant/Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

———

On Appeal from the United States District Court
for the District of New Jersey D.NJ. No. 05-cv-01481
Treated as a Petition for Review
from the Board of Immigration Appeals (A 31 061 087)
Pursuant to the Real ID Act
and on Appeal from the Denial of the Writ of Error Coram Nobis
D. NJ No. 05-cv-01487

District Judge: The Honorable Joel A. Pisano

———

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
June 28, 2006

Before: BARRY, VAN ANTWERPEN, and SILER,* Circuit Judges.

(Filed July 26, 2006)

———

OPINION

———

_____

* The Honorable Eugene E. Siler, Jr., Senior Circuit Judge, United States Court of
Appeals for the Sixth Circuit, sitting by designation.

SILER, Circuit Judge.

Petitioner Vito Evola presents two issues to this court. First, he appeals the district court's denial of his petition for a writ of error coram nobis, arguing that the ineffective assistance of his prior counsel constituted a fundamental error warranting coram nobis relief. Second, he presents a petition for review challenging the Board of Immigration Appeals' ("BIA") determination that his conviction under 21 U.S.C. § 843(b) rendered him ineligible for cancellation of removal. We affirm the decision of the district court and deny the petition for review.

**BACKGROUND**

Evola is a 39-year-old Italian national and citizen who was granted lawful permanent resident status in the United States in 1980. In 1997, as part of a plea agreement dropping other charges against him, Evola pled guilty to a violation of 21 U.S.C. § 843(b), charging use of a communication device to facilitate a conspiracy to distribute and to possess with intent to distribute a controlled substance. In 1998, he was sentenced to five years probation and did not appeal.

In 2001, the INS initiated removal proceedings against Evola based on his 1998 conviction. The INS charged that Evola was removable because he was convicted of an "aggravated felony," and because he violated a federal law relating to a controlled substance. In 2004, an Immigration Judge ("IJ") ordered Evola's removal to Italy. The BIA affirmed the removal order and Evola's ineligibility for cancellation of removal or other relief, finding that a violation of 21 U.S.C. § 843(b) constituted an "aggravated felony." Evola filed a petition for writ of habeas corpus, contesting that decision in the district court, which held that a violation of § 843(b) did in fact constitute an aggravated felony. Evola appealed that decision to this court. However, in the intervening period, Congress enacted the REAL ID Act, which means "that those habeas petitions pending before this

Court on the effective date of the REAL ID Act are properly converted into petitions for review and retained by this Court." *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005).

In 2002, Evola filed a habeas corpus petition pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his conviction as a result of ineffective assistance of counsel. He alleged that his attorney, Joseph Santaguida, advised him that he could enter a guilty plea without suffering any consequences with respect to his immigration status. In 2003, the district court denied Evola's petition because it was barred by the relevant one-year statute of limitations. In 2005, Evola filed a petition for a writ of error coram nobis in the district court seeking to vacate his conviction with the same ineffective assistance argument. The district court denied the petition, ruling that Evola had failed to show fundamental error since he could not demonstrate the prejudice necessary for an ineffective assistance claim.

## DISCUSSION

### A. Writ of Error Coram Nobis

"The writ of error *coram nobis* is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C. § 1651(a)." *United States v. Stoneman*, 870 F.2d 102, 105 (3d Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502 (1954)). The writ "was traditionally available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (quoting *United States v. Mayer*, 235 U.S. 55, 67-68 (1914)). Today, "[i]t is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer 'in custody' for purposes of 28 U.S.C. § 2255." *Stoneman*, 870 F.2d at 105-06. "We have concluded that to qualify for relief under *coram nobis* after a sentence has been served, the petitioner must show exceptional circumstances and

continuing collateral disadvantages." *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (citation omitted). The writ of error coram nobis has been repeatedly referred to as an "extraordinary remedy," "a remedy infrequently used," and "a remedy reserved for exceptional circumstances." *See, e.g., Morgan*, 346 U.S. at 511; *United States v. Baptiste*, 223 F.3d 188, 189 (3d Cir. 2000).

In explicating the contours of coram nobis, we have stated:

*Coram nobis* is an extraordinary remedy, and a court's jurisdiction to grant relief is of limited scope. [*United States v. Cariola*, 323 F.2d 180, 184 (3d Cir. 1963)]. "The interest in finality of judgments dictates that the standard for a successful collateral attack on a conviction be more stringent than the standard applicable on a direct appeal." [*United States v.*] *Gross*, 614 F.2d [365,] 368 [(3d Cir. 1980)]. It is even more stringent than that on a petitioner seeking *habeas corpus* relief under § 2255. *See* [*United States v.*] *Osser*, 864 F.2d [1056,] 1060-61 [(3d Cir. 1988)]; *United States v. Keogh*, 391 F.2d 138, 148 (2d Cir. 1968) (unlike *habeas*, where part of sentence remained unserved, no opportunity or incentive in *coram nobis* setting to retry defendant using newly discovered evidence where sentence already served).

*Stoneman*, 870 F.2d at 106.

Thus, to summarize, courts have set out three requirements for a writ of error coram nobis: (1) the petitioner must no longer be "in custody," *see Obado*, 328 F.3d at 718; (2) the petitioner must be attacking a conviction with "continuing penalties" or "collateral consequences" to the petitioner, *Osser*, 864 F.2d at 1059; and (3) the error the petitioner seeks to correct is a "fundamental error" for which "there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier," *see Stoneman*, 870 F.2d at 106 (citation omitted).

Evola makes two arguments of fundamental error: (1) the misadvice of prior counsel about the immigration consequences of his guilty plea constituted ineffective assistance of counsel that fundamentally flawed his guilty plea; and (2) it was fundamental error for the district not to advise him of the immigration consequences of his guilty plea during the Rule 11 plea colloquy. His second assignment of error can easily be dismissed. We have previously held that "Rule 11 does not require a sentencing court to explain 'collateral' consequences of a guilty plea to a defendant" and therefore

there is "no error in the sentencing court's failure to inform [a defendant] in the Rule 11 colloquy of his possible deportation." *United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) (citations omitted).

Turning to Evola's first assignment of error, we have previously held that "persons not held in custody can attack a conviction for fundamental defects, such as ineffective assistance of counsel," through coram nobis. *United States v. Rad-O-Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir. 1979). Nevertheless, it is an open question whether counsel's error regarding the collateral consequences of a proceeding is fundamental to that conviction. *See United States v. Nino*, 878 F.2d 101, 105 (3d Cir. 1989) (declining to decide "whether counsel's failure to advise a client about the deportation consequences of a guilty plea can constitute deficient representation absent special circumstances"). Assuming, without deciding, that a showing of ineffective assistance in this context would constitute fundamental error, Evola presents insufficient evidence to satisfy the standard for ineffective assistance laid out in *Strickland v. Washington*, 466 U.S. 668 (1984).

> In order for a defendant to gain relief based on a constitutional claim that his counsel was ineffective, the defendant must satisfy the two-pronged test announced in *Strickland* [ ]. The defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Both *Strickland* prongs must be met in order to merit relief . . . . With regard to the second prong, a reasonable probability is one that is sufficient to undermine confidence in the outcome.

*Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002) (internal quotations and citations omitted). To satisfy the prejudice requirement in the guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Evola argues that this means, to satisfy the prejudice prong of *Strickland*, he must only show that "but for the misadvice [of counsel] he would not have pled guilty and [would have instead] gone to trial." However, in a

-4-

similar case, we have interpreted the prejudice requirement to mean that a defendant must "show that there is a reasonable probability that but for his counsel's errors *the result of the proceeding would have been different*." *Nino*, 878 F.2d at 105 (emphasis added). In that case, given that the record was "replete with evidence of petitioner's guilt," the court "conclude[d] that even had petitioner been advised of the deportation consequences of his guilty plea, he would have pled guilty anyway or, had he not done so, been found guilty after trial." *Id.*

In this case, even were we to assume that Evola would have refused to plead guilty had he been advised of the deportation consequences of his guilty plea, there is overwhelming evidence of his guilt in the record. First, nowhere in the record of these proceedings does Evola claim his innocence. To the contrary, during his plea hearing, he expressly admitted his guilt. Furthermore, at his sentencing hearing, Evola's counsel conceded the following:

> The only thing [Evola] did was . . . Mr. Gallina was trying to get his drugs into the Camden area. They knew that Mr. Baskerville has some connections with the Camden area and the Mr. Baskerville had a drug background. The only way that Mr. Baskerville worked with Mr. Evola was strictly in the pizza place, had nothing to do with any drug activity whatsoever.

> At one point Mr. Gallina was looking for Mr. Baskerville and the phone conversations between Mr. Gallina and Mr. Evola were can you get in touch with Mr. Baskerville because we want to talk to him, not because Mr. Evola had any participation. The only reason why he is guilty is because he did know why they were trying to get together and it would be like two people who are going to commit a bank robbery and the third person said, look, I don't want any participation in this, but here's a mask you can use in case you want to do it.

> It would put him in the conspiracy, but not in the effect that he was going to share in any proceeds or participate in any type of activity in the robbery.

> Here, the only thing he does know what Mr. Gallina's about, and he does know what they want Mr. Baskerville to do. Because Mr. Baskerville works for him in a legitimate enterprise, he's trying to get in touch with him because they're looking for Mr. Baskerville and they wanted to know how the five grams would be transferred, whether or not those people liked it or didn't like it. They're saying have you seen Baskerville, can you get him in here?

As Evola pled guilty to a violation of 21 U.S.C. § 843(b),[1] this factual scenario detailed by counsel shows that Evola used a communication device to facilitate a conspiracy to distribute and to possess with intent to distribute a controlled substance.

In addition, the government possessed an impressive amount of evidence pointing to Evola's guilt. First, all eleven of Evola's co-defendants had already pled guilty and were available to testify against him. Second, the government "possessed consensual recordings of Evola's participation in the drug conspiracy." Based upon the strength of this evidence and Evola's lack of an innocence claim, Evola is unable to show the prejudice necessary to make out an ineffective assistance claim. *See Nino*, 878 F.2d at 105.

## B. Petition for Review

In his petition for review, Evola argues that there is no trafficking element in 21 U.S.C. § 843(b) and, therefore, his conviction under that statute does not constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). Although Evola concedes that he is removable since his conviction under § 843(b) is a felony punishable under the Controlled Substances Act, he contends that the BIA erred when it found him ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1) due to its finding that his conviction constituted an aggravated felony. "Review of the

---

[1] 21 U.S.C. § 843(b) states:

> It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

BIA's legal conclusions is *de novo*, with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles." *Mahmood v. Gonzales*, 427 F.3d 248, 250 (3d Cir. 2005) (citations omitted).

Despite Evola's arguments to the contrary, a conviction under § 843(b) constitutes an aggravated felony within the meaning of 8 U.S.C. § 1229b(a)(3). Definitions for Chapter 12 of the Immigration and Nationality Act ("INA"), which includes the cancellation of removal statute at issue in this case, are laid out in 8 U.S.C. § 1101. Section 1101(a)(43)(B) defines an "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 18), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c)(2) defines a "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. §§ 801, et seq.)." Evola was convicted of violating 21 U.S.C. § 843(b) – a part of the Controlled Substances Act. Accordingly, a conviction for a violation of 21 U.S.C. § 843(b) qualifies as an aggravated felony within the meaning of 8 U.S.C. § 1229b(a) and Evola is therefore ineligible for cancellation of removal. *See Khan v. Ashcroft*, 352 F.3d 521, 522 (2d Cir. 2003) (noting that a violation of 21 U.S.C. § 843(b) is "an aggravated felony within the meaning of the INA"); *see also Kayrouz v. Ashcroft*, 115 Fed. Appx. 783, 785 (6th Cir. 2004) (unpublished opinion) ("a violation of 21 U.S.C. § 843(b) qualifies as an aggravated felony under the INA").

The decision of the district court is AFFIRMED and the petition for review is DENIED.