

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-2007

# USA v. Babalola

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3887

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Babalola" (2007). *2007 Decisions.* Paper 397.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/397

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3887
_____

UNITED STATES OF AMERICA

vs.

ABOSEDE ELIZABETH BABALOLA,
a/k/a
ELIZABETH MARTINS
ABOSEDE ELIZABETH BABOLOLA,
                                        Appellant.


_____

On Appeal from the United States District Court
For the District of New Jersey
(Crim. No. 96-210)
District Judge: Honorable Harold A. Ackerman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 20, 2007
_____

Before: SLOVITER, SMITH and GARTH, Circuit Judges,

(Opinion Filed: September 21, 2007)
_____

OPINION
_____

GARTH, <u>Circuit</u> <u>Judge</u>:

In this appeal, Abosede Elizabeth Babalola challenges the district court's decision denying her motion for a writ of *error coram nobis*, by which means she sought to vacate her now more than ten year-old guilty plea. Babalola, who is now in removal proceedings before the United States Citizenship and Immigration Services ("USCIS"), contends that her attorney misadvised her about the immigration consequences of pleading guilty, thereby rendering constitutionally ineffective assistance of counsel. We will affirm.

I.

Babalola entered the United States on November 10, 1982 as a B-2 nonimmigrant visitor with authorization to remain in the United States until May 9, 1983. On April 16, 1996, Babalola pled guilty, pursuant to a plea agreement, to a one-count information charging her with credit card fraud in violation of 18 U.S.C. § 1029(a)(2). At the Rule 11 hearing, Babalola stated that between October 1993 and November 1994, she received, endorsed and deposited 15 credit card access checks drawing on accounts of individuals she did not know that were given to her by her boyfriend, Ouakin. While Babalola stated that she initially believed the checks were legitimate, she realized by March 1994 – or before depositing the last nine checks – that the checks had been fraudulently obtained.

In the plea agreement, the parties stipulated that Babalola's base offense level was 12 and that she was entitled to a two-level reduction for acceptance of responsibility, leaving her with a total offense level of 10. The plea agreement also provided that if Babalola provided substantial assistance in the government's investigation, the government would file

a motion under U.S.S.G. § 5K1.1.  The Pre-sentence report ("P.S.R."), dated July 26, 1996, stated that "Babalola . . . is an illegal alien," a fact which Babalola did not (and does not now) contest.

At sentencing on September 4, 1996, the district court, without objection, calculated Babalola's guidelines range as 10 to 16 months' imprisonment.  However, the court granted the government's motion for a downward departure under U.S.S.G. § 5K1.1, and sentenced Babalola to five years' probation with a six month period of home confinement.[1]  Among several special conditions imposed at sentencing, the district court stated that "[t]he defendant shall cooperate with Immigration and Naturalization Service to resolve any problems with her status in the United States."  Babalola did not appeal her conviction or sentence and did not file a motion under 28 U.S.C. § 2255.  Babalola completed her term of probation in 2001.

## II.

Babalola subsequently sought adjustment of immigration status to that of a lawful permanent resident as an immediate relative of her United States citizen spouse.  USCIS denied Babalola's application to adjust status on August 12, 2004 because of her criminal conviction.  On August 30, 2004, USCIS served Babalola with a Notice to Appear, charging her with being removable (1) under section 237(a)(1)(B) of the Immigration and Nationality

---

[1]The court declined, however, to grant Babalola's request for a downward departure pursuant to U.S.S.G. § 5H1.6 (Family and Community Ties), based upon her claim that a term of imprisonment would leave no one to care for her three young children.

Act ("INA"), 8 U.S.C. § 1227(a)(1)(B) for overstaying her visa; and (2) under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), for having committed the "aggravated felony" of credit card fraud. After certain proceedings before the Immigration Court, the details of which are not relevant to the present case, the Board of Immigration Appeals issued a decision reopening Babalola's removal proceedings on the grounds that the government had not established removability on either ground by clear and convincing evidence. Babalola is scheduled to appear before the immigration judge on March 12, 2008 for further removal proceedings.

## III.

On April 12, 2006, five years after completing her term of probation, Babalola filed a motion for a Writ of Error *Coram Nobis* with the district court seeking to vacate her April 16, 1996 guilty plea. Babalola argued that her attorney had provided her with "misinformation" about the effect a guilty plea would have on her immigration status. Specifically, Babalola claimed that when she asked her attorney about the "effect . . . the guilty plea might have on citizenship and even possible deportation" he replied that she "had nothing to worry about." Babalola asserts that, but for this incorrect advice, she would not have pled guilty. D. Br. at 18.

On August 15, 2006, the district court denied Babalola's motion. The district court relied upon Evola v. Carbone, 365 F. Supp. 2d 592 (D.N.J. 2005) *aff'd sub nom.* Evola v. AG of the United States, 190 Fed. Appx. 171 (3d Cir. 2006), to find that Babalola had not established fundamental error in her plea proceedings as a result of ineffective assistance of

counsel, because she "failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, she would have insisted on going to trial, and that the result of the proceeding would have been different." Dist. Ct. Op. at 4.

IV.

The writ of error *coram nobis* is an "infrequent" and "extraordinary" form of relief that is reserved for "exceptional circumstances." United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989); United States v. Osser, 864 F.2d 1056, 1059 (3d Cir. 1988); United States v. Gross, 614 F.2d 365, 368 (3d Cir. 1980) (per curiam); see Carlisle v. United States, 517 U.S. 416, 429 (1996) (noting that the remedy is so extreme that it "is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate."). It is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has completed serving his sentence and is no longer "in custody" for purposes of 28 U.S.C.A. § 2255. Stoneman, 870 F.2d at 105-06.

Because of the strong interest in finality of judgments, the standard for a collateral attack on a conviction via a writ of error *coram nobis* is more stringent than the standard applicable on a direct appeal. Gross, 614 F.2d at 368. Indeed, because a defendant seeking *coram nobis* relief has already completed her sentence, the interests in favor of revisiting the judgment are even less than in the habeas context, where the petitioner is still "in custody." Osser, 864 F.2d at 1060; United States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968) (unlike habeas, where part of sentence remained unserved, no opportunity or incentive in coram nobis setting to retry defendant using newly discovered evidence where sentence already

-4-

served). Thus, "[o]nly where there are errors of fact of 'the *most fundamental kind*, that is, such as to render the proceeding itself irregular and invalid' . . . can redress be had," Stoneman, 870 F.2d at 106 (emphasis added); United States v. Cariola, 323 F.2d 180, 184 (3d Cir. 1963) (quoting United States v. Mayer, 235 U.S. 55, 69 (1914)), and "relief will be granted only when circumstances compel such action 'to achieve justice." United States v. Morgan, 346 U.S. 502, 511 (1954). Despite this heavy burden, both the Supreme Court and this court have reaffirmed the continued existence of *coram nobis* relief in the appropriate circumstances. Id. (holding that *coram nobis* relief is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C.A. § 1651(a)).[2]

In addition to the cardinal requirement for issuance of the writ that "errors of . . .the most fundamental kind" had infected the proceedings, Mayer, supra, this court has articulated several other threshold conditions to *coram nobis* relief. A *coram nobis* petitioner must also show that (1) he is suffering from "continuing consequences of the allegedly invalid conviction," Stoneman, 870 F.2d at 106 (citing Morgan, 346 U.S. at 512-13); (2) there was no remedy available at the time of trial, id.; Osser, 864 F.2d at 1062, and that (3) "'sound

---

[2]See also United States v. Rad-O-Lite of Philadelphia, Inc., 612 F.2d 740, 744 (3d Cir. 1979) (declining to notice alleged Sixth Amendment violation raised for the first time on appeal because the defendant corporation could raise the objection before the district court in a *coram nobis* proceeding); United States v. Steese, 144 F.2d 439, 442 (3d Cir. 1944) (vacating and remanding to the district court for consideration of defendant's constitutional claims by writ of error *coram nobis*); Rothman v. United States, 508 F.2d 648, 655-56 (3d Cir. 1975) (Garth, J., Concurring) (petitioner's habeas petition should be treated as an application for a writ of *coram nobis* and remanded for appropriate proceedings).

reasons' exist for failing to seek relief earlier." Id. Of course, earlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise. Cariola, 323 F.2d at 184.

## V.

Babalola's motion for *coram nobis* relief was properly denied. First, Babalola has failed to meet the threshold requirement of demonstrating that "'sound reasons' exist for failing to seek relief earlier." Stoneman, 870 F.2d at 106. Although removal proceedings were first instituted against Babalola in 2004, it is undisputed that her visa was long expired when she entered her guilty plea on April 16, 1996. Had Babalola promptly and properly complied with the district court's direction at sentencing to "cooperate with Immigration and Naturalization Service to resolve any problems with her status in the United States," she would have immediately discovered her claim. There is no "sound reason" for her failure to do so. Even if Babalola only became aware of the consequences of her plea when she was served with a Notice to Appear in August 2004, Babalola offers no justification – let alone any "sound reasons" – for waiting an additional two years before filing a motion for a writ of error *coram nobis*.

## VI.

More importantly, as the district court correctly held, Babalola failed to establish *fundamental error* in her plea proceeding that would justify granting the writ. Babalola claims that her attorney provided ineffective assistance of counsel by providing incorrect advice regarding the impact of her guilty plea on future removal proceedings. This court has

held that ineffective assistance of counsel constitutes a fundamental defect sufficient to subject such a tainted conviction to collateral attack via a writ of *coram nobis*. United States v. Rad-O-Lite of Phila., Inc., 612 F.2d 740, 744 (3d Cir. 1979). But Babalola has not set forth a valid claim of ineffective assistance of counsel because her allegations of attorney misinformation fail to satisfy the two-part test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, in order to establish a claim for ineffective assistance of counsel:

> [t]he defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Both Strickland prongs must be met in order to merit relief . . . . With regard to the second prong, a reasonable probability is one that is sufficient to undermine confidence in the outcome.

Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002) (internal quotations and citations omitted).

It is an open question in this court whether counsel's error in advising a client regarding the collateral consequences of a guilty plea – such as the effect of the plea on future immigration proceedings – is fundamental to that conviction such that it can constitute objectively unreasonable representation under the first prong of Strickland. In United States v. Nino, 878 F.2d 101 (3d Cir. 1989), this court declined to decide "whether counsel's failure to advise a client about the deportation consequences of a guilty plea can constitute deficient representation absent special circumstances." Id. at 105. Babalola attempts to distinguish

Nino on the grounds that Nino's attorney failed to provide *any advice* regarding the consequences of his plea on removal proceedings whereas Babalola alleges that her attorney *affirmatively misinformed* her. Babalola thus asks this court to adopt a *per se* rule that the affirmative provision of misinformation regarding the consequences of a guilty plea on subsequent removal proceedings constitutes unreasonable representation under Strickland. Babalola cites a line of New Jersey cases endorsing such a rule. See State v. Garcia, 320 N.J. Super. 332, 727 A.2d 97 (App. Div. 1999); State v. Vieira, 334 N.J. Super. 681, 687-88, 760 A.2d 840, 843 (Law Div. 2000). It is not necessary to decide the issue in this case,[3] however, because Babalola has in any event failed to establish the second, or prejudice, requirement of the Strickland test.

To establish prejudice under Strickland, a defendant must show "that there is a reasonable probability that but for his counsel's errors *the result of the proceeding would have been different.*" Carpenter, 296 F.3d at 149; Nino, 878 F.2d at 105 (emphasis added). In the guilty plea context, this court has interpreted Strickland's prejudice prong to require the defendant to show a reasonable probability *both* that "but for counsel's errors, he would

---

[3]We assume, for the purposes of this appeal, the truth of Babalola's assertions that her attorney provided her with misinformation about the consequences that pleading guilty could have upon subsequent removal proceedings, allegedly advising her in this regard that she had "nothing to worry about." We note, however, that this claim is rather implausible in light of the fact – explicitly stated in the P.S.R. – that at the time of her guilty plea in 1996, Babalola's B-2 visa had been expired for more than thirteen years and that she was therefore an "illegal alien." As a result, Babalola knew or should have known at the time of the plea hearing that her status in the United States was problematic regardless of how she chose to plead.

not have pleaded guilty and would have insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 57 (1985), *and* that had he not pleaded guilty he would not in any event have been convicted at trial. Nino, 878 F.2d at 105. In Nino, for example, the court found no prejudice because the record was "replete with evidence of petitioner's guilt," and therefore "even had petitioner been advised of the deportation consequences of his guilty plea, he would have pled guilty anyway *or, had he not done so, been found guilty after trial.*" Id. (emphasis added).

Here, as in Nino, Babalola has failed to demonstrate a reasonable probability either that she would not have pled guilty had she known that doing so could affect her immigration status or that, had she not taken the plea, she could have avoided conviction at trial. As the district court noted, Babalola does not, in her motion for a writ of *coram nobis*, assert that she is factually innocent. Nor has she ever made such a claim. Indeed, at the Rule 11 hearing, Babalola expressly and unequivocally admitted guilt. A48-49 ("Q: Would that be correct, there were nine checks where you knew that what you did was wrong and unlawful? A: Yes, your Honor.").[4] Moreover, as in Nino, the record indicates that the government had overwhelming evidence of Babalola's guilt, including her confession that she cashed

_____

[4]Although Babalola initially asserted that she did not know that the payors listed on the checks had not authorized payment to her or Ouakin, she subsequently admitted that she knew by March 1994 – or at least before she cashed the last nine checks – that they were unauthorized. This admission came after a thorough and searching inquiry by the district court during which the court advised Babalola that "we don't accept pleas of guilty from innocent people. That's very, very important in this Court." Babalola does not dispute or attempt to retract any of her Rule 11 admissions.

numerous credit card access checks from payors unknown to her as well as bank records confirming her unlawful activity.

In addition, in return for her plea, Babalola received a highly favorable cooperating agreement under which she served only five years' probation with a six month period of home confinement rather than the 10-16 month term of imprisonment dictated under the then mandatory guideline regime. In light of the overwhelming evidence of her guilt and the lenity of the government's plea offer, it is highly unlikely that Babalola would have risked a trial which, the evidence shows in any event almost certainly would have resulted in conviction and imprisonment. Babalola has thus failed to demonstrate that "there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different," Nino, 878 F.2d at 105. Babalola's ineffective assistance of counsel claim therefore fails under Strickland, leaving no basis for her claim of fundamental error in her plea proceedings that would justify relief by writ of error *coram nobis*.

## VII.

The order of the district court, dated August 16, 2006, denying Babalola's motion for a writ of error *coram nobis*, will be affirmed.

_____

-10-