

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-2008

# USA v. Baird

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3697

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Baird" (2008). *2008 Decisions.* Paper 552.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/552

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3697

———

UNITED STATES OF AMERICA

v.

FRANK L. BAIRD,
Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 94-cr-00215-1)
District Judge: Hon. J. Curtis Joyner

———

Submitted Under Third Circuit LAR 34.1(a)
September 8, 2008

Before: SLOVITER, FUENTES and NYGAARD, Circuit Judges

(Filed: September 9, 2008)

———

OPINION

SLOVITER, Circuit Judge.

On June 4, 2007, petitioner Frank Baird filed a petition for a writ of error coram nobis in the District Court, requesting that his judgment of conviction be vacated and set aside. At the time Baird filed his petition, he was serving a four-year term of supervised release that commenced when he was released from prison on March 4, 2004. The District Court dismissed the petition without comment and then denied a motion to reconsider that dismissal, holding that Baird was barred from filing the petition while he was still in custody and, alternatively, that Baird's petition failed on its merits. Baird filed a timely notice of appeal.[1]

## I.

The writ of error coram nobis "is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer 'in custody' for purposes of 28 U.S.C.A. § 2255." United States v. Stoneman, 870 F.2d 102, 105-06 (3d Cir. 1989). We have made plain that a petitioner on supervised release is "in custody" for purposes of § 2255. See United States v. Essig, 10 F.3d 968, 970 n.1 (3d Cir. 1993) ("Essig was still subject to a three year period of supervised release. Therefore, the district court had jurisdiction when the petition was filed because Essig was still 'a prisoner in custody' within the meaning of § 2255.") (quoting Maleng v.

---

[1] The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Cook, 490 U.S. 488, 491 (1989)). Because Baird was on supervised release at the time he filed his petition, the District Court did not err in dismissing the petition on that ground. See Matus-Leva v. United States, 287 F.3d 758, 761 (9th Cir. 2002).

While this appeal was pending, Baird's term of supervised release ended. Because he is no longer in custody, we are presented with the question whether to reach the alternative ground for dismissal offered by the District Court or to affirm the District Court's dismissal solely because Baird was barred from filing his petition at the time it was filed.

"The writ of error coram nobis is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C.A. § 1651(a) . . . ." Stoneman, 870 F.2d at 105 (citing United States v. Morgan, 346 U.S. 502 (1954)). The Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Neither Baird nor the government argue that the "in custody" requirement for access to the writ is jurisdictional. Therefore, because Baird is now eligible for the writ, we will address the District Court's alternative ground for dismissal, as "[i]t would 'be a futile gesture,' . . . to force [him] to return to the district court and file a [new] coram nobis petition." United States v. Loschiavo, 531 F.2d 659, 662 (2d Cir. 1976).

3

## II.

In March 1994, the Drug Enforcement Agency ("DEA") and local police began investigating Baird in connection with a clandestine MDMA, i.e., "Ecstasy," laboratory in Bryn Mawr, Pennsylvania. MDMA is 3, 4-methylenedioxymethamphetamine, a Schedule I controlled substance and a hallucinogen. In March and April 1994, an undercover agent met with Baird on four occasions, three of them at Baird's residence, which was located in an apartment above his mother's garage. Baird had laboratories both in his apartment, and in the basement of his mother's house.

During the course of the undercover agent's meetings with Baird, he saw assorted lab equipment, chemicals, and drug paraphernalia, and received MDMA and amphetamines that Baird had given to a confidential informant. During multiple visits, Baird, while mixing chemicals, told the undercover agent that he was making Ecstasy, and he identified a dark liquid in large five-gallon jars as the illegal substance. In a taped conversation, Baird told the undercover agent that he was producing twenty kilograms of Ecstasy, which would be worth $600,000.

On April 20, 1994, DEA agents and local police executed a search warrant at Baird's apartment and at the adjacent house owned by his mother. Agents seized chemicals and equipment that were suspected to be involved in the production of controlled substances, eventually destroying those materials after they had been sampled. The agents retrieved more than 200 grams of powder MDMA during their search. The

4

agents also retrieved documents describing dosage administration, warnings, side effects, and safety information about MDMA.

A DEA chemist testified that 32.6 kilograms of liquid obtained from the site contained MDMA. She testified that the liquid could be "quantitated" into 6.5 kilograms of powder MDMA. Supp. App. at 386-87. The chemist testified that she used chloroform to extract MDMA hydrochloride from the liquid. She further testified that MDMA could have been produced using another precursor chemical, approximately 14 kilograms of which were found at the lab. Baird did not introduce a defense expert at trial.

After a jury trial, Baird was found guilty of conspiracy to manufacture and distribute MDMA, manufacture of MDMA, possession of MDMA with intent to distribute near a school, possession of MDMA with intent to distribute, attempt to manufacture MDMA, creating a substantial risk of harm to human life while illegally manufacturing MDMA, and maintaining a place for the manufacture of MDMA. After the bulk of the convictions were affirmed[2] and Baird's petition for certiorari was denied, Baird filed a petition for habeas corpus under 28 U.S.C. § 2255, which was denied. After his release from prison, Baird filed this petition.

_____

[2] The conviction for attempt to manufacture MDMA was ultimately vacated because it was a lesser included offense of the manufacturing charge.

## III.

In addition to the custody requirement discussed above, a writ of error coram nobis is ordinarily appropriate to correct errors only when (1) "there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier," Stoneman, 870 F.2d at 106 (quoting Morgan, 346 U.S. at 512); (2) "there are errors of fact of the most fundamental kind, that is, such as to render the proceeding itself irregular and invalid," id. (citation and internal quotation marks omitted); and (3) the petitioner has shown "that he is suffering from continuing consequences of the allegedly invalid conviction," id. (citing Morgan, 346 U.S. at 512-13). Because the District Court relied solely on the second ground in denying Baird's petition on the merits, we will limit our review accordingly.

On the basis of an expert report Baird commissioned after his release from prison, he argues for the first time in this petition that "it is scientifically impossible to extract MDMA HCl out of an aqueous solution into chloroform, [and thus] a 'most fundamental error' at trial has occurred because it renders false the extraction process which the DEA chemist testified she used." Appellant's Br. at 16. In an apparent attempt to explain how this assertion, even if true, would entitle him to the "extraordinary remedy" of the writ, Stoneman, 870 F.2d at 106, Baird argues, "if this scientific impossibility was known at trial, the accuracy and truthfulness of all of [the DEA chemist]'s testimony could have been questioned," Appellant's Br. at 16. We are not persuaded.

6

The evidence underlying Baird's conviction was extensive, consisting of witness testimony, recorded conversations between Baird and the undercover agent, dozens of photos of the clandestine laboratories, overwhelming physical evidence, and the testimony of the DEA chemist. Baird's attempt to question one aspect of the chemist's testimony more than ten years after it was entered into evidence is simply insufficient to "render[] the proceeding itself irregular and invalid," United States v. Mayer, 235 U.S. 55, 69 (1914), in light of the overwhelming evidence of his guilt that goes unchallenged, such as the more than 200 grams of powder MDMA found at his residence and the taped admission that he was manufacturing Ecstasy for sale, cf. United States v. Sawyer, 239 F.3d 31, 35 (1st Cir. 2001) (reversing grant of the writ because "there was sufficient evidence to prove Sawyer's guilt of honest services mail fraud apart from proof that he violated any state law"). Accordingly, we will not disturb the District Court's decision to deny Baird's petition for the writ on its merits.

**IV.**

For the reasons set forth, we will affirm the District Court's orders denying the petition.

7