NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1901
_____

UNITED STATES OF AMERICA

v.

MAX H. HOMER a/k/a
Max H. Homer, Jr.,

Max H. Homer,
                                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Criminal No. 75-cr-00227-001
(Honorable Nora B. Fischer)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 3, 2010
Before:  SCIRICA, JORDAN and VANASKIE, Circuit Judges.

(Filed: September 9, 2010)
_____

OPINION OF THE COURT
_____

PER CURIAM.

    Max H. Homer appeals the District Court's order denying his petition for a writ of

error coram nobis, through which Homer sought to vacate his thirty-five-year-old

conviction on charges of extortion and perjury.  We will affirm the denial of relief.

Because the parties are familiar with the background, which the District Court fully recounted in its Opinion, we merely summarize the relevant history for purposes of this non-precedential decision. In 1975, a jury in the United States District Court for the Western District of Pennsylvania convicted Homer on two counts of Hobbs Act extortion, 18 U.S.C. § 1951 (Counts I and II of the indictment), and one count of perjury, 18 U.S.C. § 1623 (Count V). Homer was a member of the Pennsylvania House of Representatives, representing a district near Pittsburgh. Count I charged him with extorting money from Gordon Terminal Service, Inc.,[1] Count II charged him with extorting money from Ruthrauff, Inc., and Count V charged him with testifying falsely before a grand jury concerning the Gordon transaction.

The District Court (Knox, J.) sentenced Homer to an aggregate of six years' imprisonment, which was later reduced to four years. This Court affirmed on direct appeal. See United States v. Homer, 545 F.2d 864 (3d Cir. 1976) (per curiam), cert. denied, 431 U.S. 954 (1977). Homer thereafter moved for a new trial claiming that the

---

[1] In particular, Count I charged Homer with extortion by using his official position as a House member "to wrongfully and unlawfully obtain and attempt to obtain property of the value of $6,500, ... in the form of money and checks, from Thomas Gordon and Ralph Castellucci as agents and representatives of the ... Gordon Terminal Service, Inc. with the consent of the said Thomas Gordon and Ralph Castellucci, said consent being induced ... under the color of official right, and by the wrongful use of fear, in that the defendant did threaten the said Gordon Terminal Service, Inc., its agents and representatives, with delay and denial of the right to occupy a new warehouse which was important to the continuation of the said corporation's business."

government had withheld exculpatory evidence. The District Court denied the motion. Homer's appeal of that ruling was dismissed in 1979 for failure to pay the docketing fees.

Thirty years later, Homer filed this proceeding for a writ of error coram nobis under 28 U.S.C. § 1651.[2] He claims that the government withheld evidence that Thomas Gordon, a key prosecution witness on Count I, see note 1, supra, served as best man at two weddings for Richard Thornburgh, who was United States Attorney for the Western District of Pennsylvania during a portion of the grand jury proceeding against Homer.[3] Homer contends that he first discovered evidence of Gordon's relationship with Mr. Thornburgh "several years after" trial, and he claims that, had this evidence been available at trial, he could have used it to impeach Gordon's credibility. Homer argues that the government violated Brady v. Maryland, 373 U.S. 83 (1963), and that his convictions should be vacated as a result.

The District Court (Fischer, J.) denied relief. It held that Homer failed to show a fundamental error warranting the extraordinary remedy of setting aside his convictions, failed to show that the purported Brady evidence was reasonably likely to change the

---

[2] "[C]oram nobis has traditionally been used to attack convictions with continuing consequences when the petitioner is no longer 'in custody' for purposes of 28 U.S.C. § 2255." United States v. Baptiste, 223 F.3d 188, 189 (3d Cir. 2000) (per curiam).

[3] On July 8, 1975, which was prior to the grand jury's indictment of Homer, Mr. Thornburgh left the position of United States Attorney and assumed the position of Assistant Attorney General for the Department of Justice's Criminal Division. He later served as Governor of Pennsylvania and as United States Attorney General.

3

outcome at trial, and failed to show any justifiable cause for his delay in seeking relief. Homer timely filed this appeal.

We have appellate jurisdiction under 28 U.S.C. § 1291. After a careful review of the record, we agree with the District Court's analysis. Coram nobis, as the District Court explained, "is an extraordinary remedy and a court's jurisdiction to grant relief is of limited scope." United States v. Baptiste, 223 F.3d 188, 189 (3d Cir. 2000) (per curiam). Coram nobis is generally reserved for the correction of a "fundamental error" for which "there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier." United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989). "[C]ourts must be cautious so that the extraordinary remedy of coram nobis issues only in extreme cases." United States v. Denedo, 129 S. Ct. 2213, 2223 (2009).

Homer has not presented "'sound reasons' ... for failing to seek relief earlier." Stoneman, 870 F.2d at 106. Despite having learned of Gordon's alleged role at Mr. Thornburgh's weddings within "several years" of the 1975 trial, Homer waited until 2009 to seek judicial review of his purported Brady claim. Homer argues that he did not seek relief sooner because he lacked funds to retain counsel, was told by lawyers that his claim had little chance of success, and was unaware of "the Brady Rule" until "reading of the ex-U.S. Senator [Ted] Stevens' case only a few months ago." Appellant's Br. at 2. These contentions do not justify the lengthy delay, which undoubtedly would prejudice the government if it was to be required to retry this case from the 1970s. Even if Homer

4

lacked funds to retain counsel, he could have pursed relief decades ago by simply filing a pro se petition setting forth the factual basis for his claim. His failure to do so cannot be excused.

Moreover, Homer has not shown how the "best man" evidence would have had anything more than a negligible impact at trial. In terms of its value in impeaching Gordon's credibility, the record reflects that Mr. Thornburgh was no longer the United States Attorney when the grand jury indicted Homer, and he neither approved of the Indictment nor was responsible for the trial proceedings.[4] Further, the alleged information regarding Gordon and Mr. Thornburgh bears solely upon the conviction for Count I of the indictment. Homer has not shown how the information would have likely altered the verdict on that count, which was supported by testimony from witnesses other than Gordon, most notably Ralph Castellucci. See note 1, supra.

We have considered Homer's contentions on appeal but find them without merit. We note his suggestion that the District Judge exhibited bias by denying the coram nobis petition. Appellant's Br. at 4. We find this suggestion devoid of support, and discern no evidence of any bias in the District Judge's thorough consideration of Homer's petition.

---

[4] Blair A. Griffith assumed the position of United States Attorney upon Mr. Thornburgh's departure. Mr. Griffith and Milton J. Carp, a Special Attorney with the Department of Justice, signed Homer's indictment, and lawyers from the Department of Justice represented the government at trial.

For these reasons, and for the reasons expressed by the District Court, we will affirm.